## Commonwealth, Appellant, *v.* Keystone Bridge Company.

*Taxation—Manufacturing corporations—Exemption from taxation—Bridge companies—Act of June 1, 1889.*

Upon an appeal from a tax settlement the court found upon sufficient evidence the following facts: " During said year the defendant was exclusively engaged in making and selling iron and steel bridges, buildings, roofs, viaducts, turntables and other articles and machinery composed wholly or in part of wood, iron, steel or other suitable material.  The process is as follows: It buys from others in a rough and unfinished form all the necessary lumber, iron, steel and other metals, finishes, shapes, frames, designs and makes suitable for use, the said materials at its own shops in the city of Pittsburgh ; sells the finished material for such use as may be intended or appropriate; and often frames, puts together and erects the said material into bridges, roofs and other structures, or machinery." *Held*, that the corporation was organized exclusively for manufacturing purposes, and was exempt from taxation, under the act of June 1, 1889, P. L. 420.

Argued May 30, 1893.    Appeal, No. 18, May T., 1893, by plaintiff, from judgment of C. P. Dauphin Co., Jan. T., 1893, No. 292, for defendant, on appeal from tax settlement.    Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Appeal from tax settlement.

The opinion of the court below was as follows, by McPHERSON, J.:

" This case was tried without a jury under the provisions of the act of 1874.    We find the facts to be as follows :

" 1. The defendant was originally incorporated under the act of 1863, P. L. of 1864, p. 1102, relating to corporations, for mechanical, manufacturing, mining and quarrying purposes, but

its present charter is to be found in the special act of 1872, P. L. 505, which is hereby made part of this finding. It has a capital stock of $652,100.

"2. During the tax year ending the first Monday of November, 1890, it declared a dividend of thirteen per cent, whereupon a tax of six and one half mills was laid by the settlement now in question under the twenty-first section of the act of 1889, but was mistakenly levied upon $682,100 instead of upon the true amount, $652,100.

"[3. During said year the defendant was exclusively engaged in making and selling iron and steel bridges, buildings, roofs, viaducts, turntables and other articles and machinery composed wholly or in part of wood, iron, steel or other suitable material. The process is as follows: It buys from others in a rough and unfinished form all the necessary lumber, iron, steel and other metals; finishes, shapes, frames, designs and makes suitable for use the said material at its own shops in the city of Pittsburgh; sells the finished material for such use as may be intended or appropriate; and often frames, puts together and erects the said material into bridges, roofs and other structures, or machinery.] [1]

"4. During said year the actual value of all defendant's property was $836,801.73, in which is included $15,000, the value of certain houses and lots which it did not use in its corporate business.

"5. It is not engaged in the brewing or distilling of spirits or malt liquors, and does not enjoy and exercise the right of eminent domain.

### "CONCLUSIONS OF LAW.

"The defendant's corporate authority is to be found in the first and second sections of the act of 1872, and we have examined them with care. Without quoting them at length, we think that all the powers which they contain are either direct powers to manufacture, or such as are added thereto, not as independent franchises, but expressly to aid the manufacturing purpose. Thus, in the first section, the defendant is authorized to 'purchase, acquire and hold in fee simple or for any less estate property real or personal;' but it must be such property as is 'necessary and proper for the purpose of carrying on and conducting their business.' In the second section power is

given 'to acquire, hold, use and apply inventions, plans and devices secured by letters patent of the United States;' but this may only be done 'when deemed necessary or needful to the success, promotion and purposes of their said business.' So, also, the defendant may 'contract with any person or corporation within any of the states or territories of the United States, or elsewhere, or be contracted with in this state by any corporation of any of the states or territories of the United States or elsewhere;' but such contracts must be 'for and in respect to the manufacture, erecting and disposing of such bridges, viaducts and other articles so manufactured.'

" Since, therefore, the charter contains no separate and independent power to carry out any other purpose than manufacturing, the defendant must be held to be 'organized exclusively for manufacturing purposes,' as required by the exempting clause of the act of 1889. This is the test prescribed by Com. v. Mann Co., 150 Pa. 64, and Com. v. Westinghouse Electric Co., 151 Pa. 265, and the correctness of the conclusion is not denied if the erection of bridges and the other structures named in the charter is properly included in the term 'manufacturing.' This, then, is the point which requires our attention.

" It is quite true that in common speech we do not say that a bridge or viaduct or house or roof is manufactured, but built or erected or constructed, and it might perhaps be true that a corporation, whose only business was the erection of such structures after the parts had been fashioned and fitted by others, would not be accurately described as engaged in 'manufacturing.' However that may be—and the question is not free from doubt—the case before us is very different. The defendant is unquestionably a manufacturing company up to the point when the various parts—beams, girders, rods, bolts and the rest—are ready to be put together in order to form the complete structure for which they were intended. The preparations of these parts from material, either raw or unfinished, is clearly manufacturing within any accepted definition of the word; and if in all cases the transaction was finished by a sale of the parts to a purchaser who would himself put them together and thus complete the structure for use, the exclusively manufacturing character of the corporation could not be questioned. Is this character destroyed, simply because the defendant, after having

manufactured the various parts of a contemplated bridge or viaduct or turntable or roof, goes one step further, and finishes the structure? Upon reason we think this question ought to be answered in the negative, and especially because the separate parts are comparatively useless and are made for no other purpose than to put them together. In the case of such a corporation as this, the power to build or erect (if indeed it ought to be considered as a distinct and separate power) is a proper, and perhaps a necessary, incident to the powers which are unquestionably manufacturing. In other words, if a corporation may frame and fashion all the parts of the bridge, it has an implied power to put the parts together in their intended seat. If it may build the bridge or the roof experimentally in its yard, it may surely build it in the very place for which it was designed. It is not easy to see why it becomes necessary to divide a business which seems to be a natural unit, and to regard it as incapable of being carried on unless two distinct franchises are given, one to prepare the material and the other to erect the structure. It seems to us more reasonable to hold that, if a corporation may manufacture a bridge in parts, it may under the same franchise put the parts together and deliver the bridge as a whole in place to the purchaser; and that it is exclusively manufacturing as truly when it is finishing the work as when it is only beginning. We see no escape from the conclusion if the subject is to be examined from this point of view.

"And the same result is indicated by the decision in Commonwealth v. Northern E. L. & P. Co., 145 Pa. 105, if the point of view there taken is to be adopted. Mr. Justice WILLIAMS says, on page 117, that the meaning of the word manufacture 'has expanded with the advance of the arts and sciences until it has come to mean as a verb the making of anything by human art or skill, and as a noun anything made by art or skill.' Accordingly, if the case had required it, the court would have been led to the conclusion that a corporation, which produced or generated electricity in order thereby to furnish light or power to its customers, was a manufacturing company. If the definition just quoted is to be applied to the present defendant, then putting a bridge or roof together is a making of something by art or skill, and is manufacture as truly as preparing the constituent parts. In this event, the exclusively manufacturing character of the defendant cannot be successfully questioned.

" But the case referred to was decided upon another ground, which also requires us to hold that the defendant is an exclusively manufacturing corporation. The court held that, when the act of 1885 exempted the capital stock of manufacturing companies from taxation, it meant those companies only which had been built up into a statutory class under the act of 1849, and succeeding acts; and that these statutes must be looked to, rather than definitions and dictionaries, to discover what the legislature meant by a 'manufacturing' corporation. This test (which excluded electric light and power companies) is to be applied also to the corporations claiming exemption under the act of 1889, now before us; for this act simply continues the policy of the act of 1885. It somewhat narrows the statutory class by requiring that the corporation must be 'organized exclusively' for manufacturing purposes, but it makes no change in the legislative definition of such purposes, and this remains as above declared by the court.

" Turning then to the acts of assembly, we find at least four to which we may briefly refer as showing that the defendant belongs to the class which the legislature regarded as a manufacturing class. The first is the act of 1849, P. L. 563, authorizing the formation of companies for the manufacture of iron, etc. The second is the act of 1853, P. L. 269, section 2, which permits companies to be formed 'for the manufacture of articles from iron and other metals, or out of wood, iron and other metals.' The third is the act of 1863, P. L. of 1864, p. 1102, which authorizes the incorporation of companies 'for the purpose of carrying on any mechanical, mineral, quarrying or manufacturing business in this commonwealth,' under which the defendant was originally chartered. The fourth is the act of 1872, P. L. 505, under which the defendant is now acting, and which speaks several times of the 'manufacture' as well as of the 'erecting' of bridges, viaducts, etc. We do not regard this use of the words as conclusive, but it is a circumstance which deserves to be considered. Taking these acts together we think it cannot be doubted that the defendant belongs to the statutory class referred to by Mr. Justice WILLIAMS, and, therefore, has been defined by the legislature itself as a 'manufacturing' company, whatever the lexicographers might have to say about some of its powers. The defendant's

original charter was under an act which only uses the word manufacture; but, for reasons already given, we hold that the power to manufacture bridges under that act necessarily implied the power to erect them, and that the act of 1872 only named a power which the act of 1863 gave without naming. As the power to build was thus implied in the power to manufacture, and was indeed a part of it, the defendant is an exclusively manufacturing corporation.

" Moreover, if the definition above quoted is to be applied, to build or make a bridge by art or skill is to ' manufacture; ' and in that event also the legislation referred to is seen to give to the defendant none but manufacturing powers.

" By any road therefore we arrive at the same result.   Our conclusions are :

" [1. The defendant is a corporation organized exclusively for manufacturing purposes, and actually carrying on manufacturing within the state.] [2]

" [2. Its capital stock is exempt from taxation so far as employed in the corporate business.] [3]

" 3. It is taxable, however, in respect of the houses and lots mentioned in paragraph four.

" The commonwealth is entitled to recover as follows:

Six and one half mills upon $\frac{15000}{838601}$ of $652,100,

or upon $11,689.00 of capital stock, .      .      . $75  97

Interest at 12 per cent from November 10, 1891,

to February 6, 1893,   .      .      .      .      .      11  30

Attorney general's commissions,        .      .      .       3  79

Total,      .      .      .      .      .      $91  06

for which amount we direct judgment to be entered, if exceptions are not filed according to law."

Exceptions (1–3, to the findings in brackets, and, 4, in not entering judgment for plaintiff) were dismissed and judgment entered.   Plaintiff appealed.

*Errors assigned* were, (1–4) dismissal of exceptions, quoting them.

*James A. Stranahan*, deputy attorney general, *W. U. Hensel*, attorney general, with him, for appellant, cited : Act of March

22, 1872, P. L. 505.   Defendant is a construction company and not a manufacturing company.

*Robert S. Frazer, Knox & Reed* with him, for appellee, cited: 14 Am. & E. Enc. L. 269; Norris Bros. v. Com., 27 Pa. 496; Carlin v. Western Assurance Co., 57 Md. 526; Com. v. Lackawanna Iron & Coal Co., 129 Pa. 357; Com. v. Westinghouse Air Brake Co., 15 Pa. 276; Com. v. Northern Electric Light & Power Co., 145 Pa. 118.

PER CURIAM, July 19, 1893:

The main question in this case is whether, according to the true intent and meaning of the revenue act of 1889, the defendant company is a corporation " organized exclusively for manufacturing purposes," etc.

The facts found by the learned judge before whom the case was tried without a jury are stated in five paragraphs, the third of which is as follows:

" 3. During the year, the defendant was exclusively engaged in making and selling iron and steel bridges, building roofs, viaducts, turntables and other articles and machinery composed wholly or in part of wood, iron, steel or other suitable material.   The process is as follows: It buys from others, in a rough and unfinished form, all the necessary lumber, iron, steel and other metals; finishes, shapes, frames, designs, and makes suitable for use the material at its own shops in the city of Pittsburgh; sells the finished material for such use as may be intended or appropriate; and often frames, puts together and erects the said material into bridges, roofs, and other structures or machinery."

This finding is the subject of complaint in the first specification of error; but an examination of the record shows that it was warranted by the evidence and is substantially accurate. The correctness of the other findings is not challenged, and must therefore be accepted as correct.   In view of the facts thus established, we think there was no error in drawing the legal conclusions specified in the second, third and fourth assignments of error.

Neither of the questions presented by the record require special consideration.   Everything that is necessary to be said

in relation to them will be found in the opinion of the learned trial judge. For reasons there given, we think there is no error in the judgment, and we therefore affirm it on his opinion.

Judgment affirmed.

See also the next case.