# Commonwealth, Appellant, *v.* Pittsburgh Bridge Co.

*Taxation — Manufacturing corporations — Exemption from taxation— Bridge companies—Acts of April 29, 1874, and June 1, 1889.*

Upon an appeal from a tax settlement against a corporation organized under the general corporation act of April 29, 1874, the court found upon sufficient evidence the following facts:

" During the said year the defendant was engaged exclusively in making and selling iron and steel bridges, roofs, girders and buildings. The process is as follows: It buys from others in a rough and unfinished form all the necessary lumber, iron, steel and other metals; finishes, shapes, frames, designs and makes suitable for use the said material at its own shops in the city of Pittsburgh; sells the finished material for such use as may be intended or appropriate; and often frames, puts together and erects the said material into bridges, roofs and buildings."

*Held* that the company was organized exclusively for manufacturing purposes, and was exempt from taxation.

Argued May 30, 1893. Appeal, No. 16, May T., 1893, by plaintiff, from judgment of C. P. Dauphin Co., March T., 1892, No. 109, in favor of defendant on appeal from tax settlement. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Appeal from tax settlement.

The opinion of the court below was as follows, by McPHERSON, J.:

" This case was tried without a jury under the provisions of the act of 1874. We find the facts to be as follows:

" 1. The defendant is a corporation of this commonwealth, chartered in July, 1882, under the general corporation act of 1874, for the purpose of "the manufacture of articles of commerce from iron and steel, and the building of bridges and roofs of all kinds from iron and steel and wood, or either of

them " (P. L. of 1883, p. 314).    It has a capital stock of
$100,000.

"2. During the tax year ending the first Monday of November, 1890, it declared a dividend of six per cent, whereupon a tax of three mills was levied upon its capital stock by the settlement now in question under the twenty-first section of the revenue act of 1889.

"3. During the said year the defendant was engaged exclusively in making and selling iron and steel bridges, roofs, girders and buildings.    The process is as follows: It buys from others in a rough and unfinished form all the necessary lumber, iron, steel and other metals; finishes, shapes, frames, designs and makes suitable for use the said material at its own shops in the city of Pittsburgh; sells the finished material for such use as may be intended or appropriate; and often frames, puts together and erects the said material into bridges, roofs and buildings.

"4. It is not engaged in brewing or distilling spirits or malt liquors, and does not enjoy and exercise the right of eminent domain.

### " CONCLUSIONS OF LAW.

"There is no essential difference between the charter of the defendant and the charter of the Keystone Bridge Company, which we have just considered in an'opinion filed to No. 292, January term, 1893, Dauphin C. P.    We refer to the reasons there given, without repeating them here, as justifying the conclusion that the defendant's charter is that of an exclusively manufacturing corporation, and that the power to ' build ' bridges and roofs neither takes away nor modifies this charter.

"The fact that the defendant was organized under the general corporation act of 1874 does not impair the argument or change the result.    That act simply gathers together many previous statutes upon this subject, and permits incorporation for any purpose which those statutes regarded as a manufacturing purpose.    The test prescribed by Com. v. North. El. L. & P. Co., 145 Pa. 118, is to be applied to all corporations claiming exemption, whether chartered before or after the act of 1874. Is the corporation a member of the statutory class of manufacturing companies, built up under the act of 1849, and the later enactments on this subject?    If so, we may safely disregard the

definitions in the dictionaries, and must assume that when the legislature in 1885 and 1889 used the name by which the class had come to be known, it intended to embrace the whole class, although some of its members might perhaps be exercising implied or incidental powers which a lexicographer would not admit to be manufacturing.

"In our opinion the legislation on this subject has treated the power to build bridges as necessarily implied in the power to manufacture (no example of a purely building corporation has been brought to our notice); and has regarded companies like the defendant as exclusively manufacturing corporations, although they 'built' such structures as well as 'manufactured' their constituent parts.

"Our conclusions are:

"1. The defendant is a corporation organized exclusively for manufacturing purposes, and actually carrying on manufacturing within the state.

"2. Its capital stock is exempt from taxation by the final proviso of the twenty-first section of the act of 1889.

"We direct judgment to be entered for the defendant if exceptions are not filed according to law."

Exceptions similar to those of the preceding case were overruled and judgment entered.   Plaintiff appealed.

*Errors assigned* were overruling exceptions, quoting them.

*Jas. A. Stranahan*, deputy attorney general, *W. U. Hensel*, attorney general, with him, for appellant.

*Robert S. Frazer, George D. Riddle* with him, for appellee.

PER CURIAM, July 19, 1893:

This case was argued with Commonwealth v. Keystone Bridge Company, No. 18, May term, 1893, [the preceding case,] and involved substantially the same questions.   For reasons suggested in opinion just filed in that case, and also in the opinion of the learned trial judge, we think there is nothing in the record that requires either reversal or modification of the judgment.

Judgment affirmed.