COLUMBIA IRONWORKS v. NATIONAL LEAD CO. et al.

(Circuit Court of Appeals, Sixth Circuit. January 5, 1904.)

No. 1,279.

1. BANKRUPTCY—APPEAL TO CIRCUIT COURT OF APPEALS—PROPRIETY—JURISDICTIONAL QUESTION.

The question whether a corporation is principally engaged in manufacturing and mercantile pursuits, within Bankr. Act July 1, 1898, c. 541, § 4, subsec. "b," 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], so as to be declared an involuntary bankrupt, is within the jurisdiction of the District Court to determine, so that an appeal properly lies to the Circuit Court of Appeals, rather than to the Supreme Court of the United States.

2. SAME—TIME FOR TAKING APPEAL—DELAY IN FILING BOND.

Where an appeal from an adjudication of bankruptcy is prayed and allowed within 10 days, as prescribed by the bankruptcy act, the failure

to file a bond and serve the citation until a few days after such period will not necessitate a dismissal of the appeal, no material prejudice being shown.

3. INVOLUNTARY BANKRUPTCY—CORPORATIONS ENGAGED PRINCIPALLY IN MERCANTILE PURSUITS—WHAT CONSTITUTES—SHIPBUILDING COMPANY.

A corporation chartered to construct and repair vessels, carry on a general shipbuilding and ship-repairing business, construct and operate a marine dry dock, etc., and whose main business consisted in the building of large steel vessels, and in repairing others, is a corporation engaged principally in manufacturing and mercantile pursuits, within Bankr. Act July 1, 1898, c. 541, § 4, subsec. "b," 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], providing that such a corporation may be adjudged an involuntary bankrupt.

Appeal from the District Court of the United States for the Eastern District of Michigan.

Phillips & Jenks, for appellant.

Ferguson & Goodnow, Bernard B. Selling, and William B. Hatch, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. Certain creditors of the appellant, the Columbia Ironworks, a Michigan corporation, filed their petition in the District Court, sitting in bankruptcy, setting forth that the appellant was a corporation engaged principally in manufacturing and mercantile pursuits, within the meaning of section 4, subsec. "b," of the bankrupt act of July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], which had become insolvent, and within four months preceding the filing of the petition had committed several acts of bankruptcy—among them, that it had made a general assignment for the benefit of its creditors—and praying that it might be adjudged bankrupt. The Columbia Ironworks appeared, and answered that it was not a corporation engaged principally in manufacturing or mercantile pursuits, and denied that it had committed any other of the acts alleged in the petition, except in making the assignment for the benefit of its creditors. To this answer the petitioners filed a replication. A reference was ordered to take proofs, and, upon the filing of the report, an order was made adjudicating the corporation a bankrupt. Thereupon the corporation appealed to this court, assigning as error that the District Court erred in holding that it had jurisdiction to hear the cause and determine that the corporation was bankrupt, and, further, that it erred in holding that the corporation was engaged principally in manufacturing or mercantile pursuits.

In this court a motion was made by the appellees to dismiss the appeal upon the ground that this court did not have jurisdiction thereof, but that the appeal should have been taken to the Supreme Court of the United States, for the reason that the question of the jurisdiction of the District Court was involved, in that its order adjudged that the Columbia Ironworks was a corporation engaged principally in manufacturing or mercantile pursuits, within the true intent and meaning of the bankrupt act, and upon the further ground that the appeal was not taken within 10 days from the adjudication in bank-

ruptcy. This court postponed the hearing of said motion to the hearing upon the merits. We think the motion to dismiss the appeal for want of jurisdiction thereof should be disallowed, upon the authority of the case of Denver First National Bank v. Klug, 186 U. S. 202, 22 Sup. Ct. 899, 46 L. Ed. 1127. There can be no question in respect of the jurisdiction of the District Court over the subject-matter, and it seems quite clear that it also had jurisdiction to determine whether the corporation was principally engaged in such a business as that it could be adjudged a bankrupt. That question was one of the elements involved in its determination. It appears that the appeal was prayed and allowed within 10 days, as prescribed by the act, but that the bond was not filed, nor the citation issued and served, until a few days after the expiration of the 10 days. But the general rule is that, when an appeal is allowed within the time prescribed by law, it is sufficient for the purpose of removing the case, though it is necessary, in order to perfect the appeal, that a bond should be filed, and that a citation should be issued and served, where, as in this case, the appeal is not prayed in open court. The filing of the bond and the service of the citation are steps to be taken in perfecting the appeal, and, if these steps are taken before a motion to dismiss the appeal is made, the court will ordinarily decline to dismiss the appeal because of the delay in filing the bond and serving the citation. In the present case the delay was for a few days only, and we do not think the interests of the opposite party were to any appreciable extent impaired thereby. The motion to dismiss upon that ground is therefore denied.

With respect to the merits, it appears that the corporation was organized under a statute of Michigan providing for the incorporation of manufacturing companies (Comp. Laws 1897, c. 188, §§ 7037–7073). And article 2 of its charter stated the purpose or purposes of the corporation to be as follows:

"To construct and repair vessels of all kinds, carry on a general shipbuilding and ship-repairing business, construct and operate a marine dry dock in connection therewith, and also the business of steel structural work of all kinds."

By the record it appears that the incorporation was effected about November 5, 1901, and the corporation had at the time of the filing of the petition in bankruptcy been engaged in business nearly two years. A considerable part of the first year was occupied in getting its plant in order for business. After that time its business had consisted of the building of two steel vessels, under contract—one for the price of $95,000, and the other at a price not fixed. Two other contracts for the building of steel boats had been taken by the company, one of which had been begun, the boats to cost about $260,000 each; and the repairing of two vessels—one to the extent of $4,200, and one to the extent of $2,100. The material for the construction and repair of vessels came to the plant largely in the unmanufactured and raw state, and it was converted from the crude and raw material by hand labor and machinery into the forms and shapes and designs requisite for the construction and repair of vessels. No doubt, the question is to be determined upon the consideration of what the corporation actually does, rather than what it is authorized by its charter

to do. But the business of this corporation appears to be that which it was authorized to engage in, namely, the building and repairing of ships, and principally in building.

We think that upon these facts the finding that the corporation was principally engaged in manufacturing was justified. The principal objection urged to this conclusion is that the building and sale of ships is neither a manufacturing nor mercantile business, and many cases are cited which are supposed to be in point, where various forms of construction have been held to be not within the purview of the language of the bankruptcy act, or similar language employed in other legislation, such as the construction and operation of mining plants for the getting out and sale of ores and coals, dry docks, floating docks, railroads, and depots, and other constructions of a fixed and localized character. With respect to mining companies, it should be observed that, probably in consequence of the decisions holding them not to be subject to the bankruptcy act, Congress, by the act of 1903 (Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1903. p. 409]), amended the law so as to include them. But we do not think the similarity of such works and business to that of building vessels employed in commerce is such as to furnish a rule for the latter. The business in question is the building of articles of commerce, as much as the building of locomotives and railway cars, or the manufacture of their constituent parts. The distinction would seem to run along the line of those articles which are more or less fixed in place, and not ordinarily the subjects of bargain and sale as articles of commerce, as contradistinguished from those which are movable and ordinarily regarded as subjects of sale and manual transfer—articles of trade in the common course of mercantile business. The associated words seem to import that Congress intended to include all those corporations which were engaged in the manufacture or sale of articles of commerce. By express designation it included printers and publishers, so as to remove all doubt as to whether their productions were to be regarded as articles of trade; but in the case of vessels, so universally employed in commerce, it was unnecessary.

We have found no case decided under the bankrupt act precisely in point, but there are a number of decisions arising under the laws of the states imposing taxes on "manufacturing corporations" which are quite pertinent for the purpose of defining the meaning and scope of the term. Thus in Commonwealth v. Keystone Bridge Co., 156 Pa. 500, 27 Atl. 1, a statute of the state exempted from taxation corporations organized exclusively for manufacturing purposes; and the question was whether a corporation engaged in the manufacture of wood, iron, and steel bridges was within the terms of the statute. And it was held that it was. Doubt was expressed as to whether the word "manufacturing" could be properly applied to the putting of bridges in place, but it was held that the preparation of the parts for putting them together from material either raw or unfinished was "clearly manufacturing, within any accepted definition of the word." Other cases in which like definition has been given to the words are Attorney General v. Belle Isle Ice Co., 59 Mich. 162, 26 N. W. 311, 60 Am. Rep. 287; People v. Knickerbocker Ice Co., 99 N. Y. 181,

1 N. E. 669; Commonwealth v. Lowell Gaslight Co., 12 Allen, 75; Carlin v. Western Assurance Co., 57 Md. 515, 40 Am. Rep. 440. And see Schriefer v. Wood, 5 Blatchf. 215, Fed. Cas. No. 12,481; Lawrence v. Allen, 7 How. 795, 12 L. Ed. 914.

The distinction between the manufacture of the material and building it into ships, and that of building engines, boats, yawls, and other small craft, is only one of size and degree, and not of principle.

We are of opinion that the order appealed from should be affirmed, with costs.