### In re MacNICHOL CONSTRUCTION CO.

(District Court, E. D. Virginia. January 28, 1905.)

BANKRUPTCY—INVOLUNTARY BANKRUPT—CONSTRUCTION COMPANY.

    A construction company engaged in constructing bridges, wharves, bulkheads, and driving piles for foundations for buildings, etc., cannot be adjudged an involuntary bankrupt under Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], as a corporation engaged in "manufacturing, trading, or mercantile pursuits."

    [Ed. Note.—What persons are subject to bankruptcy laws, see note to Mattoon Nat. Bank v. Bank, 42 C. C. A. 4.]

Upon Involuntary Bankruptcy Proceedings.

A. B. Seldner, I. W. Eason, and T. D. Savage, for petitioning creditors.

N. T. Green and R. T. Thorp, for W. H. Venable, trustee under assignment.

WADDILL, District Judge. This is an application on the part of certain creditors of the MacNichol Construction Company to have adjudicated the said company an involuntary bankrupt, because of an assignment made by the company with preferences to certain of its creditors. The company ·answers, admitting the assignment, but insists that it cannot be adjudged an involuntary bankrupt, because it is not included in the class of corporations which can be so adjudicated, within the meaning of section 4, sub-sec. "b," Bankr. Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], as amended by Act Feb. 5, 1903, c. 487, § 3b, 32 Stat. 798, pt. 1 [U. S. Comp. St. Supp. 1903, p. 410], which sub-section is as follows:

"(b) Any natural person, except a wage-earner, or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any corporation engaged principally in manufacturing, trading, printing, publishing, mining, or mercantile pursuits, owing debts to the amount of one thousand dollars or over, may be adjudged an involuntary bankrupt upon default of an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act. * * *"

The sole question to be determined by the court upon the evidence and pleadings is whether the defendant corporation is one engaged principally in manufacturing, trading, or mercantile pursuits, within the meaning of this section. Confessedly, it is not covered by any other of the designated companies named in the act, namely, mining, printing, or publishing companies. The words "manufacturing, trading, or mercantile pursuits" would likewise exclude this company, unless an unnatural meaning should be given to such language, or an unusual interpretation of the word "manufacturing" applied. It is true that to the word "manufacturing," under the present bankruptcy act, a very liberal interpretation has been given by many of the text-writers and some of the courts (an interpretation perhaps justified by the facts in the particular cases referred to); but it is to be doubted whether any of the cases (certainly unless it be the case of In re Niagara Contracting Co. [D. C.] 127 Fed. 782) goes far enough to cover such a case as the one under consideration. Of that case it may be said that it was exceptional in its character, in· that it was an effort to set aside an adjudication long theretofore had, because the company was not such a one as should have been adjudicated. The president of the company now in question, in answer to an inquiry as to what the company was principally engaged in, said: "We build bridges, build wharves, build bulkheads, and drive piles for foundations for buildings;" and in answer to a further question, the witness said his company had no regular workshop, but an office; and further described his business as follows:

"Q. In building bridges, do you only build the bridge under contract? For instance, where a county wanted a bridge, you would construct it? A.

That is all—where the city council or any other corporation wanted a bridge. Q. And you undertake to construct and build that bridge? A. Yes, sir; furnish all the materials for and build, and then we would supply the tools. Of course, we have nothing to build with except tools, and we would supply the other part, and turn it into this work. Q. But you did nothing to the bridge until you had contracted with some person to put it up? A. That is right. We only frame them as we put them together. Q. Who did you build bridges for chiefly? A. I built them for railroads and turnpike companies and private individuals; that is, different corporations—land corporations, etc. By Mr. Green: Q. This pile-driving business in the construction work you did for other people, like the city of Norfolk? A. Yes, sir. Q. Did you ever do any work for the city of Norfolk? A. Yes, sir; I was building Mahone's Lake Work—building the bulkhead. Q. You never had any place, except some office, for your business. A. Not a thing anywheres only an office. Q. In other words, did you carry your tools with you from place to place? A. Yes, sir; and had a different place for tool place, and took them as we wanted them. By Mr. Eason: Q. Your machinery was all portable? A. Yes, sir. Q. All of your machinery portable? A. Yes, sir."

It will thus be seen in this case that no element of manufacturing entered into the work performed by this company; that is to say, such as might have occurred with a large bridge establishment, where regular shops were maintained and operated for the purpose of manufacturing the structural parts of bridges, viaducts, etc., and the building proper would be the mere putting them together at the place of erection. Here bulkheads were constructed, wharves were built, bridges were put up, the timber being in each case purchased under contract or otherwise, and brought to the place where it was to be used, and then and there incorporated into the bridge; not unfrequently by the driving of a pile as cut in the forest. The petitioning creditors rely especially upon the case of Columbia Iron Works v. National Lead Co. and Others, 127 Fed. 99, 62 C. C. A. 99, 64 L. R. A. 645. In that case the corporation was chartered to construct and repair vessels, carry on a general shipbuilding and ship-repair business, construct and operate a marine dry dock, etc., and its principal business consisted in the building of large steel vessels and repairing others. The corporation there was held liable to be adjudicated a bankrupt. This case, however, is readily distinguishable from that. The work incident to building steel vessels and in repairing others was largely, in the nature of things, work of a manufacturing character, and the company there maintained a large plant for the purpose of manufacturing the material from the raw state by hand labor and machinery, etc., into forms, shapes, and designs requisite for the construction and repairing of vessels to be used in the commerce of the country. The case expressly recognized a distinction, which would seem to include work of the character here under consideration, from that included in that case. It says:

"The distinction would seem to run along the line of those articles which are more or less fixed in place, and not ordinarily the subject of bargain and sale, as articles of commerce, as distinguished from those which are movable and ordinarily regarded as subjects of manual transfer—articles of trade in the common course of mercantile business."

The nature of the work to be performed in this case was of a permanent character, and in every instance affixed to the soil. In

other words, it was work clearly of construction, as distinguished from manufacture; and to include this company in the classes that are the subject of bankruptcy would not only give to the language of the bankrupt act in the enumeration of the incorporated companies subject to its provisions a strained and unnatural interpretation, but would, in effect, add an important class of companies not covered by the act at all. A construction company, in the sense of doing construction work, is a company clearly distinguishable from a manufacturing company, and the word "manufacturing," by no natural meaning, should include such latter company; and since a construction company for the purpose of structural work is as much an independent company as a manufacturing company is for manufacturing purposes, the former company should not be included within the words "trading or mercantile pursuits."

The court is not unmindful of the fact that there would seem to be no good reason why a construction company as well as a manufacturing company should not be subject to the provisions of the bankrupt law; and the possible injustice that may arise from the fact that the former company, as in this case, can prefer certain of its creditors, to the exclusion of others, whereas like action on the part of a manufacturing company would be avoided by the bankrupt act. The reply to this is that Congress has so enacted, and the courts have only to administer, and not make, the laws.

Counsel for petitioners, in support of the liberal construction of the language of the bankruptcy act, have, in addition to the foregoing citations, referred to Collier on Bankruptcy (4th Ed.) pp. 56, 57, and Commonwealth v. Keystone Bridge Co., 156 Pa. 500, 27 Atl. 1; and the defendant company to Hughes, Fed. Juris. 86; In re Minnesota & Arizona Construction Co. (Ariz.) 60 Pac. 881; In re New York & West Chester Water Co. (D. C.) 98 Fed. 711. Without attempting to review these decisions at length, it may be said, in passing, that a critical examination of those relied upon to maintain the right to adjudication in this case will demonstrate that in each of the cases in which an adjudication was had, the business of the company adjudicated bankrupt was chiefly manufacturing in character, as distinguished from structural work.

The conclusion of the court is that this particular company does not belong to the class which may be adjudicated involuntary bankrupts, and the petition asking its adjudication is dismissed.