TOBIN, COMMISSIONER OF INSURANCE, *v.* ESTES.

(*Nashville,* December Term, 1934.)

Opinion filed February 23, 1935.

Roy H. Beeler, Attorney-General, and W. H. Eagle, Assistant Attorney-General, for plaintiff in error.

Higgins & Moore, of Nashville, for defendant in error.

Mr. Justice Chambliss delivered the opinion of the Court.

Estes is an agent whose occupation is soliciting for a foreign fraternal benefit association, Woodmen of the World, domesticated and licensed to do the business of insuring its members in Tennessee. Required to pay the

privilege tax provided for in the second paragraph of item 100, subdivision (b), section 2, article 3, p. 141 of the Revenue Act of 1931, he sued to recover the tax as unlawfully exacted of him. He was given judgment by the circuit court, and Tobin, commissioner of insurance, appeals.

The pertinent portion of the subdivision in question, found in section 2, art. 3, chapter 13, Public Acts of the Second Extra Session of 1931, reads as follows:

"Each insurance agent, solicitor, member of a firm except those representing domestic, State and county mutual fire insurance companies, shall, for the purpose of soliciting or writing insurance in this State, pay a privilege tax direct to the Commissioner of Insurance and Banking in lieu of all other taxes before a license to transact such business shall be issued as follows:

"In counties having a population of 50,000 or more, per annum.... $20.00."

It is insisted for Estes that "each insurance agent, solicitor," etc., does not embrace him, because (1) his association is not an insurance company, and he is not, therefore, an insurance agent; (2) that, since every fraternal benefit society is declared by the statute (section 6424 of the Code) to be a charitable and benevolent institution, with its funds exempt from all taxes, except on real estate and office equipment, this privilege tax may not be exacted of agents and solicitors working for such institutions; and (3) that the legislative history of this privilege tax law amounts to a legislative construction that this tax should not be taken to include agents of fraternal organizations; (4) that exception of agents for such associations from the tax under this provision finds support in the executive construction

heretofore given by the enforcement officials of the State; and, finally (5) that the provisions of the subsection before us contained in the preceding paragraph indicate a purpose to except such associations and their agents.

1. We are unable to agree with the learned argument of counsel for Estes that fraternal benefit societies, treated of in article 9 of the Code, under this heading, are not, in the generally accepted sense, within the descriptive term "Insurance Companies." Title 14, Art. 9 (section 6357 *et seq.*) treating of insuring fraternal societies, is a subdivision of chapter 6 of the Code, headed, "Insurance and Insurance Companies." This chapter deals with insurance, of all forms and types, the insurers and their agents. The benefits provided for under the certificates issued by fraternal associations are frequently referred to in this chapter as insurance; for example, see regulatory article 13 (section 6443 *et seq.*), violations of which are made a misdemeanor. And note this language of Code, section 6138: *"Insurance Agents Licensed without Recommendation of Other Agents.*—The comissioner of insurance and banking is given the power, upon application to him by any insurance company, association, fraternal benefit society, or other insurance organization, or agent or general agent, to license any person to transact the business of an insurance agent or solicitor," etc. Use of the language, "fraternal benefit society, or other insurance organization," clearly classes fraternals as one form of insurance organization. The power conferred "to license any person to transact the business of an insurance agent or solicitor" undoubtedly embraces agents and solicitors of fraternal organizations.

Section 6140, requiring "every insurance company, including fraternal benefit asociations," to obtain a "cer-

tificate of authority for every agent or solicitor writing or soliciting insurance for it," expressly denominates one soliciting insurance for a fraternal organization as an insurance agent or solicitor. Illustrations might be multiplied. A fraternal benefit society is defined by the Code (section 6357) as a "voluntary association . . . which shall make provision for the payment of benefits," etc., and the learned annotator (Williams) says, under this section, that these "societies are insurance companies and their contracts are properly termed 'policies,'" citing cases; and in *Littleton* v. *Sain,* 126 Tenn., 461, 150 S. W., 423, 424, 41 L. R. A. (N. S.), 1118, Mr. Justice BUCHANAN, treating of a fraternal society, speaks of its contract as one of "insurance," and says "that his membership in this order amounted to an insurance upon his life in the event of death by accident is quite clear." Argument is presented to defeat the effect of this opinion and of those cited in the annotation above mentioned, but it is with nomenclature that we are now dealing; the issue is one of phraseology, rather than legal principles decided. The description of fraternal societies in these opinions as "insurance" organizations or associations, therefore, has a significant bearing upon the meaning to be given the term "each insurance agent" in the act before us.

It is urged that fraternal organizations differ distinctively from other insuring organizations in methods and forms used and also in objects; the fraternals not being operated for profit. Wholly different methods of operation distinguish many of the classes of companies writing insurance. We have "old line," mutuals, and stock companies, assessment and nonassessment, group and individual policies and certificates. Many

of the purely mutuals disclaim all purpose of operating for profit. It is of common knowledge that insurance issued by fraternals has grown, along with the general growth of insurance, to huge proportions, and that in many cases insurance has become a dominant feature. Whatever may have been formerly the case, it is now, we think apparent that such associations are within the general descriptive term "insurance" companies, and an agent or solicitor of a fraternal must therefore be treated as embraced within the term "insurance agent." The words used in the statute are thus "accepted in their natural and ordinary sense" as required by the rule. *Partee* v. *Memphis Concrete Pipe Co.,* 155 Tenn., 441, at page 446, 295 S. W., 68.

2. Nor do we find that this privilege tax is in conflict with the limited tax exemption provided for by section 6424 which declares every such organization to be a charitable and benevolent institution. The exemption is of the funds of the organization. The privilege tax here challenged is not a tax upon such funds, but solely a tax upon a solicitor, upon his occupation as such. It affects the individual and not the organization.

3. The insistence that legislative history should be looked to, and that an intention is shown thereby to exclude agents of fraternal organizations from this tax, is rested chiefly on the fact that the corresponding clause of the Revenue Act of 1923 (Pub. Acts 1923, ch. 75, p. 264, sec. 6) read: "Each insurance agent, solicitor, member of a firm, including organizers or solicitors for any fraternal benefit society or corporation, except those representing domestic mutual insurance companies," etc.; while the subsequent enactments, beginning with the year 1925, do not contain the words "including or-

ganizers or solicitors for any fraternal benefit society or corporation." The argument plausibly made is that this omission of these words formerly incorporated expressly applying the tax to solicitors for fraternal organizations indicates a purpose on the part of the Legislature to except them from the tax. This point commands attention, and it would be strongly persuasive, but for two confuting considerations. In the first place, this is a rule of construction, applicable only in cases of ambiguity (*State* v. *Manson,* 105 Tenn., 232, 58 S. W., 319; *Mengel Box Co.* v. *Stevens,* 141 Tenn., 373, 210 S. W., 635; *Price-Bass Co.* v. *McCabe,* 161 Tenn., 67, 29 S. W. (2d), 249), and, having found that fraternal organizations are named and classed in the Code and in our decisions as insurance companies, no doubt remains that the language of the act before us, ''Each insurance agent, solicitor,'' etc., includes a solicitor for such an organization, as well as other insurance companies, so that no ambiguity is found invoking application of the legislative construction rule. And, in the second place, this rule is subject to another, more imperative, that, when the Legislature has expressly incorporated exceptions, the court must assume that the exceptions incorporated are all intended. ''An express exception, exemption or saving excludes others.'' Lewis' Sutherland on Statutory Construction, sec. 494, expressly approved by this court in *Turner* v. *Eslick,* 146 Tenn., 236, 240 S. W., 786, and *Sheely* v. *McLemore,* 153 Tenn., 498, 500, 284 S. W., 61. It will be recalled that the language of the act before us is: ''Each insurance agent, solicitor, member of a firm except those representing domestic, State and county mutual fire insurance companies, shall, for the purpose of soliciting or writing insurance in this State,

pay a privilege tax," etc. (Pub. Acts, 1931, 2d Ex. Sess., ch. 13, art. 3, sec. 2, Item 100.) And emphasis is added by reference to the immediately preceding paragraph of the same subdivision wherein a privilege tax of $2\frac{1}{2}$ per cent on gross premiums is fixed upon "assessment life and casualty companies, except fraternal, benefit association," etc. It thus appears that the Legislature, when treating of the companies, excepted fraternals, but, when treating, in the same subsection of the act, of agents and solicitors, does not include agents of fraternals in the excepting clause. The controlling significance of this cannot be escaped.

██ 4. What has just been said applies to the argument based on the omission of state officials to collect this tax in former years. This again is a rule of construction, persuasive only, and never followed except in cases of ambiguity, and then ordinarily applied cumulatively, in support of views otherwise well grounded. Moreover, the record shows no affirmative ruling by the state collecting officials, and fails to show why the tax was not collected. And, on the other hand, it does appear that the Attorney-Generals of two administrations, the legal advisers of the state officials, have construed the act as fixing liability upon the agents of this class of insurance organizations.

██ 5. Nor can we agree with learned counsel for Estes that the exception of fraternal companies from the $2\frac{1}{2}$ per cent tax on their premium receipts indicates a purpose to except their agents and solicitors treated of in the succeeding paragraph. In our view, the reverse is true, as already suggested. It is important to keep in mind the distinction between a tax upon the company itself, or its funds, expressly exempted by section 6424, and a tax on agents and solicitors of the company.

We find no sound justification for reading into this revenue privilege tax clause an exception of agents of fraternal insurance organizations.

The judgment must be reversed, and decree entered here dismissing the suit.