**City of Chicago, Appellee, v. Reuter Bros. Iron Works, Appellant.**

**Gen. No. 41,803.**

Heard in the first division of this court for the first district at the October term, 1941. Opinion filed April 20, 1942.

LOUIS W. REINECKER, JR., of Chicago, for appellant.

BARNET HODES, Corporation Counsel, for appellee; JAMES A. VELDE, BARNEY FAGEN and ALPHONSE CERZA, Assistant Corporation Counsel, of counsel.

MR. PRESIDING JUSTICE MCSURELY delivered the opinion of the court.

On a trial by the court defendant was found guilty of violating a section of the Chicago Zoning Ordinance and fined $200, and it appeals.

The section of the zoning ordinance in question is 194A–12 (b), found in the current Municipal Code of Chicago of August 30, 1939. This seeks to regulate the kind of business which may be permitted in certain parts of the city. The ordinance defines what are called manufacturing districts, and the type of work which may be carried on in such districts. The section in question relates to what is called "M2 use," and provides that "No M2 use shall be established nearer to a residence or apartment district than 400 feet nor nearer to a commercial district than 125 feet." An M2 use is defined in section 194A–11 of the code as including the handling of materials which customarily emit noise affecting the comfort or wel-

fare of occupants of residence districts located within 400 feet of the premises occupied by the M2 use. This use is also defined as including ''Metal fabricating processes or the assembling of materials where snap riveting is done, or where processes creating noises permitted . . . for the manufacturing of such products as . . . structural and reinforcing steel for buildings, bridges, ships and other structures . . .''

The defendant was charged with being guilty of violating this code in the conduct of its business on the premises located at the rear of 10115–43 S. Talman avenue, within 400 feet from a residential district; that these violations began on January 10, 1941, and continued to February 14, 1941. It was stipulated that a part of defendant's business conducted on these premises was ''the metal fabricating, processing and assembling of structural steel for buildings.''

Witnesses testified that in the conduct of the business a great deal of noise was made, from pounding of hammers, punching of holes through steel, roar of the furnace, dropping of beams, and snap riveting; that there was a difference between ''snap riveting'' and ''squeeze riveting''; that by the latter process, after the rivet is put in the hole it is flattened by a device which is worked by compressed air which makes a hissing sound; that in snap riveting the rivet is flattened in the hole by an air hammer which makes a steady tattoo or click, sounding like a machine gun.

The defendant argues that the evidence fails to show that it was engaged in ''manufacturing'' structural steel, and says it was engaged only in ''assembling'' structural steel for buildings. The ordinance includes under M2 use not only metal ''fabricating processes,'' which might mean manufacturing in the strict sense of the word, but also ''the assembling of materials where snap riveting is done, or where processes creating noises . . . are carried on.''

Moreover, it has been held that manufacturing may include a number of successive processes which may be required to make the final product. *H. H. Kohlsaat & Co. v. O'Connell,* 255 Ill. 271. In *Dolese & Shepard Co. v. O'Connell,* 257 Ill. 43, 46, the corporation sought exemption from a tax on its capital stock on the ground that it was purely a manufacturing corporation. It was shown that under its charter it was authorized to make improvements in materials which it employed in its business. The court held that whenever labor is bestowed upon an article, resulting in a new form or new combinations, the process of manufacture has taken place; that the company could use material already manufactured. We are of the opinion that ''metal fabricating, processing and assembling of structural steel,'' comes under the definition of manufacturing.

There was a conflict in the evidence as to whether the defendant used the process of snap riveting upon its premises. A Mr. Dimford testified that defendant's place of business was about 60 feet from the property line of his residence. He was an electrical engineer and testified that during the period from January 10 to February 13 he heard disturbing noises practically every day coming from defendant's premises; that he heard pounding, roar of the furnace, dropping of the beams, and snap riveting on certain days, which he noted; that he knows what snap riveting is; that the noise from the ''squeeze riveting'' machine prevented him from sleeping. Another witness living within 60 feet of defendant's premises testified that he heard noises from snap riveting made by defendant; that these noises kept him awake. Several other witnesses testified to the same effect. As opposed to this there was the testimony of a Mr. Burke, a building inspector of the city, and a Mr. O'Shea, that they visited the premises and while they were there they heard only slight noises and never saw

any snap riveting on the premises. The weight of the testimony of both of these witnesses was considerably lessened by their admissions that they were hard of hearing. Other witnesses gave testimony tending to show that there was no snap riveting on the premises.

This is a case for the application of the well-known rule that where the court saw the witnesses and observed their demeanor while on the stand, a court of review will not disturb its finding unless it is against the manifest weight of the evidence.

Defendant also argues that it was error for the trial court to sustain objections to evidence as to other noises in the vicinity. Such evidence would not be relevant to the charge that defendant was violating a section of the zoning ordinance. *City of Metropolis v. Gibbons,* 334 Ill. 431, 437; *American Baking Co. v. City of Wilmington,* 370 Ill. 400. Defendant cites *City of Chicago v. Dube,* 235 Ill. App. 618 (Abst.). There the defendant was charged with maintaining a nuisance, and the court held that whether the defendant's business was a nuisance depended upon the character of other businesses and the neighborhood generally. Here we have only the question as to whether the defendant violated a particular section of the zoning ordinance.

If the building department issued to defendant a certificate of occupancy, this would have no connection with the requirements of the zoning ordinance, but relates merely to the physical attributes of the building, but such certificate of occupancy would not authorize a violation of the city's zoning ordinance. *Sinclair Refining Co. v. City of Chicago,* 246 Ill. App. 152; *Burton Co. v. City of Chicago,* 236 Ill. 383.

The validity of the ordinance is not questioned. The only point to be determined is whether defendant carried on its business in violation of the zoning ordinance which forbade noises affecting the comfort and welfare of persons residing within a limited distance

of the premises. The trial court's conclusion in this respect is supported by sufficient evidence, and it will not be disturbed.

The judgment is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.