WESTERN PIPE LINE CONSTRUCTORS, INC.

*v.*

J. M. DICKINSON, Commissioner of Finance and Taxation for the State of Tennessee, and ROY H. BEELER, Attorney General of the State of Tennessee, both residents of Nashville, Davidson County, Tennessee.

*(Nashville,* December Term, 1957.)

Opinion filed February 6, 1958.

250

Sims Crownover, Thomas G. Watkins and Tom Stewart, Nashville, for appellant.

George F. McCanless, Attorney General, Allison B. Humphreys, Solicitor General, and Milton P. Rice, Assistant Attorney General, for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

The complainant is a Delaware corporation engaged in the business of constructing oil and gas pipe lines across the State of Tennessee. These pipe lines are constructed on behalf of different concerns transmitting oil and gas

to customers by means of such pipe lines. During the period from March 1, 1951, through February 29, 1952, the complainant completed several contracts with the Tennessee Gas Transmission Company.

The complainant's duties in performing its contracts required the clearing of rights of way across the countryside, the digging of ditches, stringing of pieces of pipe beside the ditches and welding them together, the cleaning, coating and wrapping of the pipe, and, after lowering the pipes into the ditches, to clearing away all debris necessary to the restoration of the land to its former condition.

The complainant seems to be specially qualified to construct these pipe lines and lower them beneath rivers and streams.

Under the terms of the complainant's contract with the Tennessee Gas and Transmission Company, the latter was obligated to furnish all pipe, castings, valves, sleeves and all necessary coating and wrapping materials, while the complainant was required to furnish all oxygen, acetylene torches, welding rods, explosives, timber, sand, gravel, cement, etc. In no case was the complainant a buyer or seller to the public of any merchandise. Nor did it pretend to own any real estate in Tennessee, where any articles were manufactured for sale. Its operations required the use of specialized equipment and skilled labor, all of which was furnished by the complainant. With the few exceptions noted herein all property necessary to the work of completing the pipe lines, and also the lines themselves, belonged to the Tennessee Gas and Transmission Company, or other similar contractees.

■ The complainant was thus liable for taxes as a foreign corporation according to the statutory formula prescribed for doing business in this State, the same being a "franchise and excise tax", and apportioned to its local business engagements. It filed a tentative franchise and excise tax return with the Commissioner of Finance and Taxation for the fiscal year ending February 29, 1952. This return was based on the formula set forth in Sections 67-2707 and 67-2913, T.C.A., which formulae are applicable to foreign corporations engaged in the business of manufacturing, collecting, assembling or processing goods or materials. The complainant was later advised that its return should apportion its net worth and net income to Tennessee in accordance with the formulae as set forth in Sections 67-2710 and 67-2916, T.C.A., the same being applicable to corporations whose principal Tennessee business is "other than the manufacture or sale of tangible property". In response to the foregoing request the tax return was so filed and an additional sum of $9,588.28 was paid to the Commissioner under protest.

Thereupon this suit was filed to recover the aforesaid sum of money on the theory that it was illegally exacted.

The Commissioner's answer to the bill was that the complainant was liable under the formulae as prescribed in 67-2710 and 67-2916, T.C.A., and that liability attached pursuant to these Sections of the Code.

The Chancellor heard the cause and found in favor of the defendant's contention. From this decree the complainant appealed and assigned errors.

The assignments of error singly and collectively complain that the Chancellor "should have adjudged that said appellant was engaged either in manufacturing in its broad and comprehensive sense, or in some form of collecting, assembling or processing of materials and hence was entitled to compute its tax liability *either as a manufacturer, assembler or processor of materials,"* citing 67-2707 and 67-2913, T.C.A. (Emphasis supplied.)

The Chancellor by decree, sustaining the Commissioner's assessment, held that the Legislature "did not intend to create a new classification of taxpayers whose principal business was other than that of 'manufacturing' ", etc. It was thus provided in the decree:

"And it further appears to the Court and the Court finds from the entire record in this cause *that complainant's principal business is neither manufacturing nor manufacturing consisting of collecting, assembling, or processing of goods or materials,* and it, therefore was not entitled to compute its tax liability as a manufacturer or a collector, assembler or processor of goods or materials, under the provisions of Sections 67-2707 and 67-2913 T.C.A.; but that the defendant Commissioner correctly assessed complainant with said additional tax liability under the provisions of Sections 67-2707 and 67-2912 T.C.A."

The last mentioned Code Sections in the decree, to-wit, 67-2707 and 67-2913, is an erroneous citation because the defendant Commissioner correctly assessed complainant with said additional tax liability under Sections 67-2710 and 67-2916, which formulae are applicable to corpora-

tions whose principal business is "other than the manufacture or sale of tangible property".

In support of its assignment of error the complainant's counsel argues that the assessment was properly made in the first instance, that is, under the "manufacturing" formula.

The complainant is, as its corporate name implies, a "construction" company. In considering the overall scope of the complainant's business, as heretofore stated in this opinion, as well as its contractual obligations, there seems to be no basis for holding that its *principal business* is that of a "manufacturer of goods or materials".

When these and related Code Sections are thoughtfully analyzed the tax return of a construction company, engaged in a limited manufacturing activity, such as we have here, must be under the Code Sections held to be applicable by the Commissioner, to-wit, 67-2710 and 67-2916, T.C.A.

██ ██ We are not unmindful of the general rule of construction of tax statutes; it must be liberal in favor of the taxpayer. *Burns v. Johnson,* 174 Tenn. 615, 618, 130 S.W.2d 89, 123 A.L.R. 1022, and other cases cited. But words employed by the Legislature in the enactment of such statutes are to be taken in their natural and ordinary sense. *Sanford Realty Co. v. City of Knoxville,* 172 Tenn. 125, 110 S.W.2d 325; *Hedges v. Shipp,* 166 Tenn. 451, 62 S.W.2d 49; and *Tobin v. Estes,* 168 Tenn. 403, 79 S.W.2d 550.

The authorities are in conflict as to whether construction work constitutes manufacturing.

"It is sometimes difficult to determine with legal exactness what is or is not manufacturing since the subject is a large one and there is considerable conflict in the decisions, and since the determination frequently depends on the purpose or object of a statute or instrument." 55 C.J.S. Manufacturers sec. 3, p. 680.

"When 'manufacture' is defined as referring to goods, wares, and merchandise, to the making of articles of commerce which ordinarily may be the subject of barter and sale, the term does not ordinarily include the building of outdoor structures." 55 C.J.S. Manufactures sec. 4, p. 690.

But there are cases holding that "in view of other definitions, there are decisions holding that the term 'manufacturing' is applicable where the article produced is a structure, such as a building, house, road, bridge," etc. 55 C.J.S. Manufactures sec. 4, p. 691.

■ ■ A distinction must be made between what constitutes "construction work" and "manufacturing". Where the work performed is solely for the use and benefit of another, who furnishes the material that is to be used in the erection of some permanent structure, we think it cannot be characterized as manufacturing. From a practical point of view it amounts to nothing more or less than construction work for hire. *Commonwealth v. Wark Co.*, 301 Pa. 150, 151 A. 786; *Morrison-Knudson Co., Inc. v. State Board of Equalization*, 58 Wyo. 500, 135 P.2d 927. The term "manufacture" in ordinary usage does not contemplate construction work. *Commonwealth*

*v. Wark Co., supra; Morrison-Knudson Co., Inc., v. State Board of Equalization, supra; In re Kingston Realty Co.* 2 Cir., 160 F. 445; *Morley v. E. E. Barber Construction Co.,* 220 Ark. 485, 248 S.W.2d 689; *People ex rel. Turner Construction Co. v. Cantor,* 196 App.Div. 213, 186 N.Y. S. 890.

The Pennsylvania cases, cited on appellant's brief, are applicable to claiming exemption from taxation by the State where the corporation is " 'organized exclusively' for manufacturing purposes." *Commonwealth v. Keystone Bridge Co.,* 156 Pa. 500, 27 A. 1, 2; *Commonwealth v. Pittsburgh Bridge Co.,* 156 Pa. 507, 27 A. 4. The case of *City of Chicago v. Reuter Bros. Iron Works,* 314 Ill. App. 315, 41 N.E.2d 213, is not at all helpful in deciding the issue involved in this case. The question there decided was whether or not the defendant was violating a zoning ordinance of the city.

In the case of *Commonwealth v. Keystone Bridge Co., supra,* the bridge company's only business was to buy in the rough and unfinished condition all necessary lumber, iron and other materials, and at its own shops finish, shape and make such materials suitable for use and put the same together in the erection of bridges, roofs and other structures or machinery, and it is a corporation exclusively for manufacturing purposes, etc. This opinion has no application here. We can have no quarrel with it, or the case of *Commonwealth v. Pittsburgh Bridge Co., supra.* In the case at bar the contractee, Tennessee Gas Transmission Co., was the owner of practically all the material that went into the construction of the pipe lines, as heretofore pointed out in this opinion.

Adverting to the question made in this case of the meaning of the word "manufacturer" or "manufacturing" and its significance in ruling upon any legislative act, and especially a taxing statute as in the case at bar, it is said in our own case of *Benedict Brothers v. Davidson County,* 110 Tenn. 183, 188, 67 S.W. 806, 807, "The ordinary definitions of the word 'manufactured' can aid us but little." We have repeatedly held as pointed out in this opinion that it must be considered in its ordinary sense. The point is clearly exemplified in the case of *Commonwealth v. Wark Co., supra* [301 Pa. 150, 151 A. 788], wherein the Court said:

"* * * It is not within the province of a court of law to recognize affirmatively and adopt judicially a new and unusual limitation, extension, or modification of the meaning of a word in a statute which is of common usage, inwrought for centuries into our language, to apply it to a matter or situation where neither custom, common sense, nor necessity requires or authorizes such application. The clause in defendant company's charter which reads 'manufacture of buildings' is an anomaly, which no standard dictionary of our language has ever accepted, and which ordinary popular usage has never sanctioned."

The Court is not privileged in construing statutes to the consideration of dictionary definitions of particular words. We must find legislative intent from the statute as a whole, having due regard for its overall purposes. *First National Bank of Memphis v. McCanless,* 186 Tenn. 1, 207 S.W.2d 1007. Moreover we are bound to look to related Sections of the Code in connection with Sections directly applicable to the issue in controversy. *Tiger*

*Creek Bus Line v. Tiger Creek Transp. Ass'n,* 187 Tenn. 654, 216 S.W.2d 348.

When due consideration is given to all the probative evidence in the instant case we find that the complainant is not a manufacturer, assembler or processor of materials. While the argument of complainant's counsel is not without merit in its persuasive effect, we cannot view the operations of the complainant otherwise than as a construction undertaking pursuant to its contract with Tennessee Gas Transmission Company.

Finally when we come to further consider the "manufacturing" formula relied on by complainant in computing its tax liability, there are factors which must appear in its return such as "value of real estate and tangible personal property", "gross sales" (excise tax only), all of which contemplate a corporation engaged in the manufacture of goods and wares for sale on the open market. In the case at bar the complainant owned no real estate nor personal property except some specialized equipment (said to be of considerable value) for use in performing its contract; nor could there be a report of "gross sales", for there were no sales. It possessed no manufactured product for sale.

▆ In response to the complainant's contention that the State is bound by a prior ruling of the Commissioner of Finance and Taxation that it must file its tax return under the manufacturing formula, as was required in the Morrison Construction Company case, we respectfully disagree. The Morrison Construction Company case, referred to in appellant's brief, involved a prior ruling by the Department of Finance and Taxation, which

was apparently not approved by the State's Attorney General.

In *Collins v. McCanless,* 179 Tenn. 656, 169 S.W.2d 850, 853, 145 A.L.R. 1380, it was held:

" * * * While the court does ordinarily defer to a construction of the statute long given to it by those charged with its enforcement, if we are satisfied such construction is erroneous, we are impelled to depart from it."

The assignments of error are overruled and the Chancellor's decree is affirmed.