English v. Crenshaw.

MARY J. ENGLISH, Admx., *v.* THOMAS B. CRENSHAW, Clerk.

(*Jackson.*   April Term, 1908.)

1. **INHERITANCE TAX.** May be constitutionally imposed by statute.

A privilege tax may be constitutionally imposed upon the right of succession by will, inheritance, or otherwise, to the estates of deceased persons, not as a tax upon property or upon the right of alienation, but upon the right privilege, or condition of receiving such property. (*Post, pp.* 536, 537.)

Acts cited and construed: Acts 1893, ch. 174; Id., ch. 89, sec. 7.
Case cited and approved: State v. Alston, 94 Tenn., 681.

2. **TAXATION.** Exemptions must appear in statute; but statutes will not be extended to subjects not included.

It is axiomatic and fundamental that exemptions from taxation must positively appear, and that no implication will arise that any species of property or subject of taxation was intended to be excluded if it comes within the fair purview of the act; but statutes imposing taxes will not be extended by construction or intendment to subjects lying outside of the domain of the statutes. (*Post, pp.* 537, 538.)

Cases cited and approved: Memphis v. Bing, 94 Tenn., 644; Eidman v. Martinez, 184 U. S., 583.

3. **INHERITANCE TAX.** Laws to be strictly construed against the government and favorable to the taxpayer.

The inheritance and succession tax is a special tax, and the rule is that special tax laws are to be construed strictly against the government and favorable to the taxpayer, so that the citizen cannot be subjected to special burdens without clear warrant of law. (*Post, pp.* 538, 539.)

Case cited and approved: Kerr's Estate, 159 Pa., 512.

4. **SAME.** Property received in compromise of will contest is not subject to inheritance tax, where it was not so subject under the will.

Where a testator, by his will, left all his property to his widow, to the exclusion of all his heirs at law, who contested the will, which was set aside in the circuit court, but upon appeal the case was reversed and remanded for a new trial, and thereupon the controversy was compromised and the contest withdrawn in consideration of the widow's conveyance of one-half of the decedent's property to the contestants, the testator's collateral heirs, it is held that such collateral heirs did not derive title from the deceased testator, but from the deeds of the widow, and no collateral inheritance tax inheres or attaches to the property or is due under the statute (Acts 1893, ch. 174; Id., ch. 89, sec. 7) imposing a tax upon all estates passing by will, inheritance, or deed made in contemplation of death or to take effect in possession or enjoyment after the death of the grantor, to such collateral heirs and others, with the exception of certain relatives.

Acts cited and construed: Acts 1893, ch. 174; Id., ch. 89, sec. 7.

Cases cited and approved: Pepper's Estate, 159 Pa., 508; Kerr's Estate, 159 Pa., 512; Hawley's Estate, 214 Pa., 525; Kerr's Estate, 2 Pa. Dist. R., 535; Page v. Rives, 1 Hughes (U. S.), 297; Fed. Cas., No. 10666; Brune v. Smith, 13 Int. Rev. Rec. (U. S.), 54, Fed. Cas., No. 2053.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County.— J. P. YOUNG, Judge.

W. B. GLISSON and T. K. RIDDICK, for English.

English v. Crenshaw.

ATTORNEY-GENERAL CATES, G. P. SMITH, and W. B. ELDRIDGE, for Crenshaw.

---

MR. JUSTICE MCALISTER delivered the opinion of the Court.

This suit was brought by the county court clerk of Shelby county against Mary J. English, administratrix *cum testamento annexo* of the estate of C. B. English, deceased, for the purpose of recovering an inheritance tax alleged to be due the State. The case was submitted to the Honorable J. P. Young, of the circuit court, on the following stipulation of agreed facts:

"C. B. English, a citizen of Shelby county, Tennessee, died January 26, 1904. He was childless, but left as his widow Mary J. English, the administratrix *cum testamento annexo*. His heirs at law were Annie E. Ricks, a sister, and the children of his deceased brother, T. C. English.

"C. B. English left a will by which all his property, real, personal, and mixed, was left to his widow (Mary J. English) to the exclusion of his heirs at law (Annie E. Ricks, a sister, and the children of T. C. English, deceased).

"The heirs at law then instituted a contest of the will, and upon trial before a jury the will was set aside.

"An appeal was then taken to the supreme court by the proponent, and the case was reversed and remanded for a new trial.

"The case then came on for trial, and after the jury was selected, impaneled, and sworn, but before the trial was proceeded with, the following compromise was offered by the administratrix, Mary J. English, and accepted by the heirs at law of C. B. English:

"Mrs. English proposed that if defendants, Mrs. Ricks and the heirs of T. C. English, would withdraw their contest, that she (Mrs. English) would deed to Mrs. Ricks one-fourth in value of all the lands belonging to C. B. English at his death and to the heirs of T. C. English one-fourth of the value of said land; the land to be divided by appraisers or commissioners. The land has not yet been divided; but it is agreed that the case may proceed as if it had been divided, and Mrs. Ricks and the heirs of T. C. English now had a deed to their respective one-fourth. It is also agreed that all rents and profit accruing from the land of C. B. English since his death should be equally divided between Mrs. Mary J. English and Mrs. Ricks and the heirs of T. C. English as follows:

"One-half to Mrs. Mary J. English, and one-fourth to Mrs. Annie E. Ricks, and one-fourth to the heirs of T. C. English.

"Thereupon the contest of the will was withdrawn and the jury found in favor of the will, upon which verdict the judgment of the circuit court was duly entered. The entry recites that by consent of parties it is further adjudged that proponent pay the costs, for which execution might issue.

"The value of the estate going to Mrs. Annie E. Ricks was fixed by appraisers at $12,600. The value of the estate going to the heirs of T. C. English was fixed at the same figures, viz., $12,600."

The question propounded to the circuit judge for decision was: Is the State entitled to collect a collateral inheritance tax, either from Annie Ricks, the sister, or from the heirs of T. C. English, the nephews and nieces of C. B. English, or from both? The circuit judge was of opinion that Mrs. Annie Ricks, the sister of C. B. English, deceased, and the children of T. C. English, not belonging to the exempted classes, were liable for the succession taxes on the sum of $25,000, the value of the property deeded to them by Mrs. English, and that the State was entitled to recover thereon the sum of $1,642.25, the amount of said tax, with interest and attorney's fees, against the property in the hands of the administratrix. The defendants below appealed from the judgment of the circuit court, and insist that neither Mrs. English, as the widow of the devisee or administratrix *cum testamento annexo,* nor the grantees of Mrs. English, under the terms of the compromise, were liable for any inheritance or succession tax.

Chapter 174, p. 347, of the Acts of 1893, provides for a tax upon all estates, real, personal and mixed, situated in the State, whether the person dying seised lived in the State or not, passing either by will or in-

heritance or by any deed, grant, bargain, gift or sale made in contemplation of death or to take effect in possession or enjoyment after the death of the grantor to any person or body corporate or politic in trust or otherwise, when the property thus passing goes to any other than the father, mother, husband, wife, children and lineal descendants.

By another act passed at the same session of the general assembly, being section 7, c. 89, p. 146, of the Acts of 1893, the exemption was extended to brothers, sisters, the wife or widow of a son, and husband of a daughter, and any legally adopted child. In construing these acts it was said by this court in *State* v. *Alston*, 94 Tenn., 681, 30 S. W., 751, 28 L. R. A., 178.

"The legislature has constitutional power to impose a privilege tax upon the right of succession, whether by will, inheritance, or otherwise, to the estates of deceased persons. It must be borne in mind that the tax is not upon the property, but the right or privilege of acquiring it by succession. It is a condition upon which the person may take the estate of a deceased relative by inheritance, or testator by his will. It is a retention by the State of a part of a deceased person's property which the State may take to meet its necessities, and which in certain cases it may take *in toto,* as in cases of escheated property. It is not a tax upon the right of alienation, but on the privilege of receiving by inheritance or will or otherwise, at the death of a former owner."

The reasoning of the circuit judge by which he reached his conclusion is thus stated in the following paragraph of his written opinion filed with the record:

"The court therefore holds that under the will of C. B. English the whole estate, in the absence of contest, would have passed to the widow who was exempt from the operation of the law. But contest having been made by the heirs at law, who were not so exempt, and a compromise and division of the property having been agreed upon, only one-half of it passed to the exempted widow under the compromise, and the other half passed to the heirs at law under the statute of descent and distribution; the will being null and void as to that half."

Again he stated:

"The widow is exempt from this tax as to all the estate devised by will from the testator. The collateral heirs are not exempt, but liable on whatever property they receive under the laws of descent and distribution.

Again his honor stated:

"It is clear that the property received by the heirs at law under the compromise did not pass to the widow under the will."

We think the crucial inquiry in the case is presented in these excerpts from the opinion of the circuit court. Is the tax sought to be collected, under the circumstances presented on this record, within the contemplation of the legislature and the intendment of the act. It is axiomatic and fundamental that exemptions from taxation must positively appear, and that no implication

will arise that any species of property or subject of taxation was intended to be excluded if it comes within the fair purview of the act. But, while this is true, statutes imposing taxes are not extended by a construction or intendment to subjects lying outside of the domain of the statute.

In *Memphis* v. *Bing*, 94 Tenn., 644; 30 S. W., 745, this court held:

"It is a general rule that in the interpretation of all statutes levying taxes or duties upon subjects or citizens not to extend their provisions by implication beyond the clear import of the language used, or to enlarge their operation, so as to embrace matters not specifically pointed out, although standing upon a close analogy. In every case, therefore, of doubt, such statutes are construed most strongly against the government and in favor of the citizen or subject, because burdens are not to be imposed beyond what the statutes expressly and clearly import."

In *Eidman* v. *Martinez*, 184 U. S., 583, 22 Sup. Ct., 517, 46 L. Ed., 697, it is said:

"It is an old and familiar rule of the English courts, applicable to all forms of taxation, and particularly special taxes, that the sovereign is bound to express its intention to tax in clear and unambiguous language, and that a liberal construction be given to words of exception confining the operation of duty, though the rule regarding exemptions from general laws imposing taxes may be different.

English v. Crenshaw.

"We have ourselves had repeated occasion to hold that the customs revenue laws should be liberally interpreted in favor of the importer, and that the intent of congress to impose or increase a tax upon imports should be expressed in clear and unambiguous language."

In 27 Ency. of Law (2d Ed.), p. 340, it is said:

"The succession tax is a special tax, and the rule is that special tax laws are to be construed strictly against the government and favorable to the taxpayer, so that the citizen cannot be subjected to special burdens without clear warrant of law."

*In Re Kerr's Estate*, 159 Pa., 512, 28 Atl., 354, the supreme court of that State, in dealing with the Pennsylvania succession tax law, which is almost identical with the Tennessee statute on the same subject, said:

"Collateral inheritance taxes can only be imposed in the cases specified by the statute, to wit: Upon real or personal estate passing at the death of the owner, either by will or under the intestate laws of the State, or transferred by deed, grant, bargain, or sale made or intended to take effect in possession or enjoyment after the death of the bargainor, to the persons made subject to such tax.

"No liberality of construction can extend the language of the statute so as to make it include either moneys paid to extinguish the title of persons claiming adversely to the decedent whose estate is liable to taxation, or property surrendered by way of compromise to

the person so claiming, and thus never forming a part of the decedent's estate at all. Such persons are neither legatees nor devisees, as are next of kin, nor are they grantees, etc., under assignments or transfers made or intended to take effect after the death of the bargainor. The allowance or compromise of their claims simply reduce the estate afterwards passing to volunteers with the same effect as if the reduction had been caused by the payment of debts, or as if the payment or surrender had been the result of a suit terminating in favor of the claimant."

It will be observed the Pennsylvania court distinctly decides that property surrendered by way of compromise is not subject to the succession tax. The facts of that case may be briefly outlined.

Elizabeth S. Palmer died September 25, 1886, leaving a last will and testament in which she devised all of her property to Mary Jane Kerr, a friend of the testatrix. The heirs at law and next of kin of Mrs. Palmer instituted a contest of her will. Mrs. Kerr died in the meantime and the contest was afterwards compromised by her heirs at law and next of kin entering into an agreement by which they withdrew all claims from Mrs. Palmer's personalty and one-half of her realty. The court held that the heirs at law and next of kin, with whom the compromise was made, were neither legatees, nor devisees, nor next of kin, nor grantees of the testatrix, and hence were not embraced within the terms of the succession statute. This question again arose in a later

English v. Crenshaw.

case, and was decided by the supreme court of Pennsylvania March 19, 1906, and is reported in *Re Hawley's Estate,* 214 Pa., 525, 63 Atl., 1021. The facts of that case are set out in the opinion as follows:

"The claim of the commonwealth is for collateral tax on money paid by the heirs of the decedent to persons who were named as beneficiaries in a writing purporting to be a will which was not admitted to probate. The decedent died in 1903, leaving surviving him a widow and two daughters. Two writings purporting to be his wills were found. By the first, dated 1899, he gave annuities to his sisters and the rest of his estate to his daughters, except a bequest of $5,000 to his employees. By the second, dated in 1902, he provided an annuities for his sisters, payable the first Monday of April, and gave to his employees, who had been with him three years or upwards $10,000, 'to be divided between them,' etc., 'payable the first Monday of April of each year.' . . . A *caveat* was filed with the register of wills, and negotiations were pending between the daughters and employees, eighty-seven in number, for several months. . . . These negotiations resulted in a written agreement by which it was provided that the employees should be recognized as creditors of the estate to the extent of the gross sum of $55,000. The register entered a decree reciting that all the parties in interest had been notified and had appeared before him, and that, having considered the allegations and the evidence offered in the case, he sustained the objections of

the *caveators* and refused probate of the writing.
. . . No mere device intended to evade the payment
of a tax due the commonwealth can be effective. Courts
look beyond the form of any arrangement by which the
commonwealth is deprived of a tax to its substance, to
ascertain its real purpose. An agreement to set aside a
will and to make distribution in accordance with its
provisions will not relieve legacies passing to collaterals
from the tax. Such an agreement is evidently collusive,
but money paid in good faith in compromise of threaten-
ed litigation is not subject to tax. *Pepper's Estate,* 159
Pa., 508, 28 Atl., 353; *Kerr's Estate,* 159, Pa., 512, 28
Atl., 354.

"It is averred in the answer to the petition for a cita-
tion that the controversy as to the validity of the will
was not collusive, but real, and that the compromise
agreement was made in good faith to avoid a contest,
and not for the purpose of evading the payment of
collateral inheritance tax. There is nothing in the tes-
timony nor in the conduct of the parties to the arrange-
ment that raises a doubt of the truth of these averments.
In the decision of the case they must be considered as es-
tablished facts. That the annuities given to the em-
ployees of the decedent in the writing purporting to be
his will were mere gratuities and gave rise to no legal ob-
ligations that they could enforce as creditors of his es-
tate is of no importance. They claim that the writing
was a valid will and that the provision for their benefit
was in discharge of an obligation of the decedent. The

heirs denied the validity of the writing as a will because of the want of testamentary capacity. A settlement was made in which the employees were treated as creditors and allowed a part of their demands. This was clearly a compromise of a doubtful right to avoid litigation by which the heirs parted with a portion of the estate in the purchase of peace. The employees took nothing under the will, and the money paid them was not subject to tax, unless the whole arrangement was collusive."

The court held in that case that the payments made to the legatees in such settlement were not subject to the collateral tax.

It will be observed in that case the court held that the employees took nothing under the will, the will having been set aside after the compromise between the legatees and the heirs of the testator, and that money paid in good faith in compromise of threatened litigation is not subject to tax.

We are unable to differentiate the two cases from Pennsylvania already quoted from the facts of the case now in judgment. In principle they are perfectly analogous, and, since a counterpart, almost, of the Tennessee statute, was under construction by the Pennsylvania court, its conclusions are stongly persuasive in the settlement of the present controversy. The circuit court, however, laid much store by the case of *In re Pepper's Estate*, 159 Pa., 508, 28 Atl., 353, decided about the same time, but shortly before the adjudications in the two

cases already mentioned. The facts presented in that record were that Edward Pepper died March 1, 1892, intestate, unmarried, and leaving issue, one son, Dr. Edward Pepper. By his will, dated March 18, 1891, he disinherited his son, Dr. Edward Pepper, upon the ground that he had already been amply provided for by the trust estate left to him by his grandfather. The testator devised his estate to various relatives. The son, Dr. Edward Pepper, filed a *caveat* and commenced taking testimony to contest this will. Pending these proceedings, after taking a great deal of testimony, he entered into an agreement of compromise, dated February 27, 1893, by which Dr. Edward Pepper withdrew all claim to the personal and real estate on the payment to him of $25,-000. The question presented was whether the executor of the estate of Edward Pepper was liable to the payment of a collateral inheritance tax on the sum of $25,000 paid to Dr. Edward Pepper, son of the testator, under the compromise agreed. Said the court:

"The question now arises whether the legatees are liable, not only to the collateral tax upon the balance of their legacies, but also to that upon the amount they agreed to pay the *caveator* in compromise and settlement. We have reached the conclusion that under the most favorable construction of the act, so far as respects the contention on behalf of the commonwealth, they are not so liable, and for the reason that the amount paid the *caveator* was never received by them as legatees, and under the act there is only so much of the estate

English v. Crenshaw.

which actually passes to them by virtue of the will that is liable to the tax. It will readily be seen, if the contest instituted by the *caveator* had been successful, he would be entitled under the intestate law to the entire estate and freed from the tax; but, instead of further litigation, he accepted a portion of the estate, relinquished his claim to the balance, and thus, of course, reduced the amount passing to the legatees, and in fact, to the extent of the amount he received, the will is a nullity. So that all the legatees take is the amount of their bequest after deducting the sum paid to *caveator,* and this they conceded is subject to the tax. This, we think, is the proper construction to be placed upon the act of the assembly. A contrary view would not only be inequitable, but would work a hardship upon legatees and distributees. It was never contemplated thus to impose a double burden, and it may be suggested that the compromise is infinitely more to the interest of the commonwealth than if the terms of the settlement were reversed; that is, the will set aside, the entire estate received by the *caveator,* and then he had paid the legatees as a gratuity the amount they now receive. No tax whatever would then be paid. And as is shown in *Kerr's Estate,* 2 Pa. Dist. R., 535 (affirmed the next case) 'the payment to the *caveator* simply reduced the estate afterwards passing to 'volunteers with the same effect as if the reduction had been caused by the payment of debts,

or if the payment or surrender had been the result of a suit terminating in favor of the claimant.' "

The court therefore adjudged that the legatees were not liable for a collateral inheritance tax on the sum of $25,000 paid to Dr. Edward Pepper under the compromise.

The circuit judge was of opinion that if it had appeared in the *Pepper Case* that the contestant, Dr. Edward Pepper, was a brother or nephew, instead of a son, of the testator, he would have been chargeable with the succession tax. We are unable to see how such a conclusion can be deduced from the language of the *Pepper Case.* The real controversy there presented was whether the legatees, who had given up a portion of the estate devised to them by way of compromise to the contestant, were liable to a payment of the succession tax on the amount paid, and that question was resolved in their favor. The whole estate had been devised to these legatees under the will, and, it not appearing that they belonged to the exempted class, they were liable to the payment of the tax, but only upon the amount actually received by them. It was held that the amount paid out by them in settlement of pending litigation was to be likened to the payment of a debt, thus reducing the amount of the estate received by them. It is true that Dr. Edward Pepper was not liable for the payment of the inheritance tax, for the reason that he belonged to the exempted class; nor would he have been liable, in our opinion, if he had been a nephew or any other mem-

ber of the nonexempt class, for the reason that he did not inherit the property from the testator, but it came to him from the legatees under the will.

Herein lies the real principle governing the present case. The defendants do not derive their title from C. B. English, but from the deed of Mary J. English, the widow. In an action of ejectment to recover these lands, the defendants would deraign their title from the deed of Mary J. English, and not by descent cast, as heirs and distributees of C. B. English. The defendants do not take by inheritance, will, deed, grant, gift, or otherwise from C. B. English, and hence, under the provisions of the act imposing the tax, no inheritance or succession tax inheres or attaches to the property in controversy. Mrs. English derived her title from C. B. English under the will, while the defendants derived their title from Mrs. English by deed. The property was disincumbered of any inheritance tax in the hands of the widow as the sole beneficiary of her husband's will, nor was it taxable for such purpose in the hands of her vendees.

We entirely agree with counsel that:

"Mrs. English had a perfect right to make this proposition, and Mrs. Ricks and T. C. English's heirs had a perfect right to accept it. Mrs. English had a perfect right to buy her peace. The law encourages compromise, and no rule of law or sound reason could make the grantees from Mrs. English liable for an inheritance tax, when they did not inherit, and where the property so con-

veyed had been given to Mrs. English by will of her husband, and when by the very terms of the statute she took it free from the inheritance tax."

An analogous line of cases has arisen when claims for taxes under the United States internal revenue laws have been sought to be imposed on money received as the result of a compromise of will contests. Mr. Dos Passos, in his work on Inheritance Tax Law (section 65), says:

"Where money is received by grants under a deceased person's will by reason of a compromise contract between them and the executors, sanctioned by a court having jurisdiction, the money so received does not fall within the category of legacies and distributive shares in intestate estates which are subject to federal revenue laws"—citing *Page* v. *Rives*, 1 Hughes (U. S.), 297, Fed. Cas. No. 10666; *Brune* v. *Smith*, 13 Int. Rev. Rec. (U. S.), 54, Fed. Cas. No. 2053.

The contingency suggested by counsel for appellee, that by fraud and collusion the State might be entirely defeated of its tax, has not arisen in this case. There is no semblance of proof in the record that this compromise was not made in the utmost good faith, and not as a mere subterfuge to evade the payment of the tax. We are, therefore, of the opinion, for the reasons stated, that the judgment of the circuit court was erroneous and must be reversed, and a judgment pronounced here in favor of defendant, with costs.