United Inter-Mountain Telephone Company et al.,
Appellant,

*v.*

Hardy R. Moyers, Commissioner, etc., Appellee.

426 S.W.2d 177.

(*Nashville*, December Term, 1967.)

Opinion filed March 18, 1968.

MacFarland & Colley and William B. Cain, Columbia, for appellant.

George F. McCanless, Attorney General, and Milton P. Rice, Deputy Attorney General, Nashville, for appellee.

Mr. Justice Humphreys delivered the opinion of the Court.

United Inter-Mountain and United Utilities sued the Commissioner to recover a certain part of gross receipts taxes paid pursuant to T.C.A. sec. 67-4102, Item Q. A demurrer to their bill was sustained, the Chancellor holding the case was ruled by *General Telephone Co. of the Southeast v. Boyd,* 208 Tenn. 24, 343 S.W.2d 872 (1960), and *Tennessee Trailways, Inc. v. Butler,* 213 Tenn. 136, 373 S.W.2d 201 (1963). Complainants have appealed assigning this action as error.

United Inter-Mountain Telephone Company is a Virginia corporation authorized to conduct a telephone business in Tennessee, with principal offices at Bristol. United Utilities is a Kansas corporation which became owner of United Inter-Mountain's stock as a result of a merger with Inter-Mountain Telephone Company on May 23, 1966. The telephone business has been carried on since the merger in the identical manner it was carried on prior thereto.

On April 1, 1966, Inter-Mountain paid the Commissioner its excise and franchise taxes aggregating $163,787.37, pursuant to Chapters 27 and 29 of Title 67, T.C.A. The payment covered the 1965 tax year. T.C.A. secs. 67-2716, 67-2920.

Subsequent to the May 23, 1966 merger, United Inter-Mountain prepared its gross receipts tax return due August 1, 1966 under Item Q. of T.C.A. secs. 67-4102 and 67-4320. The return covered the short period May 23-June 30, 1966, and the ensuing tax year July 1, 1966-June 30, 1967. Gross receipts under Item Q. were reported for the short period at $27,350.36. This figure, annualized pursuant to sec. 67-4320, to ascertain United's 1966-67 gross receipts tax, resulted in the figure $265,288.97. United reduced this amount by crediting against it the entire franchise tax, $53,598.79, and the applicable percentage (i.e., the ratio of intrastate receipts to total receipts) of the excise tax, $84,051.85, paid by Inter-Mountain prior to the merger, a total of $137,650.54. On August 1, 1966, United Inter-Mountain paid the Commissioner the difference, $127,638.33.

The Commissioner disallowed the claimed credit for franchise and excise taxes, so on November 10, 1966,

United Inter-Mountain paid the Commissioner the $137,-650.64 plus $2,308.01 interest from August 1, 1966. United Inter-Mountain and United Utilities then sued to recover the disallowed credit and the interest.

The Commissioner demurred to the bill on the grounds: (1) that it claimed a credit for franchise and excise taxes paid by another corporate entity; (2) that no statute provided for the transfer of a tax credit earned by a predecessor corporation to a mergee corporation; and (3) that the mergee complainant was shown by the bill not to have operated in Tennessee during the time in which the credit was earned.

Holding he was bound by *General Telephone Co. of the Southeast v. Boyd*, supra, and *Tennessee Trailways, Inc. v. Butler*, supra, but again making clear his dissatisfaction with the result required thereby, the Chancellor sustained the demurrer and dismissed the original bill.

We have concluded for reasons we shall state that this case is unlike the General Telephone case and is not ruled by it. Nor, is it to be ruled by *Tennessee Trailways, Inc. v. Butler*, which involved statutes applying to motor vehicle fleet registration, and contain provisions altogether different from those here involved. And that the lower court decree should be set aside.

T.C.A. sec. 67-4102, Item Q. provides:

"Item Q. Telephone and telegraph companies.—Each person operating a telephone business for the transmission of messages or conversations within this state or operating the apparatus necessary to communicate by telephone, and each person operating a telegraph company in this state or operating the apparatus necessary to communicate by telegraph, shall

for the privilege of doing such business pay to the state for state purposes an amount equal to three per cent (3%) of the gross receipts derived from intrastate business in this state. Such gross receipts shall include all rentals and other similar charges and shall also include all tolls received from business which both originates and terminates in this state. However, all persons covered by this Item shall be exempt from the tax herein imposed upon gross receipts up to the amount of ten thousand dollars ($10,000), but shall be liable for the state tax upon all gross receipts in excess of ten thousand dollars ($10,000).

"When such persons are operating telephone companies or telegraph companies partly within and partly without this state, the gross receipts shall be deemed to be all receipts on business beginning and ending within this state.

"It is the intention of this Item to levy a tax for the privilege of engaging in intrastate commerce carried on wholly within the state and not a part of interstate commerce.

"There shall be credited upon the tax hereby imposed any taxes paid by the owners of such business on either of the businesses named in the heading of this Item under the Franchise Tax Law and under the Excise Tax Law during the calendar year in which the tax hereby levied becomes due.

"The tax hereby imposed shall be administered and collected in accordance with secs. 67-4315—67-4323.

"In addition to the above tax, each municipality is hereby authorized to impose on telephone and telegraph companies other than mutual home telephone

companies not operated for profit, a rental tax of twenty-five cents (25 cents) on each telephone and telegraph pole standing on the streets, or along the streets, of such city. This tax is to be collected and retained by the municipality.''

The Commissioner quite properly states in his brief that ''the resolution of this controversy hinges upon the construction to be accorded the above provisions, particularly the words 'owners of such business' '' appearing in the second paragraph quoted.

We do not think the General Telephone case is controlling authority for the simple reason that case was concerned with a question different from that here involved. The question there was, whether General Telephone Company, which was held to be an altogether different corporation from Southern Continental Telephone Company, had to pay a privilege tax when it commenced to do business in Tennessee, since Southern Continental with which it had consolidated had paid the tax on its business prior to consolidation. We held, since General was a different corporation and there was no provision for the different corporation to have the benefit of the privilege tax paid by the corporation from whom it had acquired the business and property, that it had to pay the privilege tax.

In this case we have a different situation. The question here is not whether United Inter-Mountain has to pay a new privilege tax; it has done that. The question is, rather, what is the privilege tax United Inter-Mountain has to pay. This, of course, can only be ascertained by construing Item Q., and not by reference to the general principle that a new and different privilegee is not

entitled to the benefit of a privilege tax paid by his transferor.

Although *Tennessee Trailways, Inc. v. Butler*, 213 Tenn. 136, 373 S.W.2d 201 (1963), was apparently decided upon an application of the different privilegee rule, it actually involved T.C.A. sec. 59-437, which provides for the apportionment of the cost of the registration plates of interstate fleet motor carriers of passengers, "so that the total cost of such registration shall bear the same proportion to the registration costs provided in secs. 59-421 and 59-422, as the total number of miles operated in Tennessee *by the fleet of such carrier registered in Tennessee during the preceding year bears to the total number of miles operated by such fleet during such year.*"

It is obvious that sec. 59-437, in express terms, limits the apportionment to the fleet of the carrier which has paid the tax. This is the only possible construction of the words "fleet *of such carrier* registered in Tennessee during the preceding year".

So that while Tennessee Trailways is similar to this case in that it involved the question as to the base of the tax rather than the question whether one privilegee can be substituted for another, the decision in that case is actually sustainable upon the basis of the language of the statute. And we cannot construe *Tennessee* as requiring us to ignore the explicit provisions of a statute and to apply General to every privilege tax case. That opinion decided that case. We have a different statute, on which we must decide this case.

Turning to a consideration of Item Q., it is at once noticed that the term *"each person"* is used throughout

in describing the privilege taxpayer. However, in the provision of Item Q. we are most concerned with, this term is not used. Instead, it is provided:

"There shall be credited upon the tax hereby imposed *any taxes paid by the owners of such business* on either of the businesses named in the heading of this Item under the Franchise Tax Law and under the Excise Tax Law *during the calendar year in which the tax hereby levied becomes due.*"

So, the case comes down to the meaning of the italicized words.

 The Commissioner argues that we should construe these words as having a present connotation. While no authority is cited in support of this proposition, we think it is generally true that statutes as a whole are generally so construed to avoid retroactivity in application. But, it is also true that a statute should be read and applied as it reads, and if it does not necessarily have a present connotation, and in fact contemplates a past event as having effect in a present situation, it should be so construed and applied. In this case we are not dealing with the application of an entire statute, but simply one provision therein, so concern with retroactivity is needless; and the event, the payment of the franchise excise tax, necessarily has a past connotation, in reference to a later credit.

 It is also argued by the Commissioner that statutes according exemption from taxation are subject to strict construction against one claiming the benefits thereof. While this Court has made this statement where it was claimed the property of a corporation was exempted from taxation by its charter (*State v. Bank of*

*Commerce,* 95 Tenn. 221, 31 S.W. 993 (1895)), and where it was claimed that a particular species of property or subject of taxation was exempted by the taxing statute (*English's Estate v. Crenshaw,* 120 Tenn. 531, 110 S.W. 210 (1908)), we have consistently held that ambiguities in taxing statutes ought to be resolved in favor of the taxpayer, and that such statutes are not to be extended by implication beyond the clear import of the language used. *First Nat. Bank of Memphis v. McCanless,* 186 Tenn. 1, 207 S.W.2d 1007 (1948); *Templeton v. Bartlett,* 190 Tenn. 347, 229 S.W.2d 509 (1950); *Neuhoff Packing Co. v. City of Chattanooga,* 191 Tenn. 395, 234 S.W.2d 824 (1950); *Evans v. Memphis Dairy Exchange,* 194 Tenn. 317, 250 S.W.2d 547 (1952). And, time and again, we have said that tax statutes must be, as a general thing, liberally construed in favor of the taxpayer and strictly construed against taxing authority. *Western Pipeline Constructors Inc. v. Dickinson,* 203 Tenn. 248, 310 S.W.2d 455 (1958); *Gallagher v. Butler,* 214 Tenn. 129, 378 S.W.2d 161 (1963).

■■ The point we make by this particular discussion is that in final analysis exemptions from taxation being the exception, claims therefor should be carefully examined by the Court, while taxing laws, resulting in the extraction of money from its objects, are likewise to be carefully examined to see that the tax is applied and administered as the General Assembly intended. As stated in *Tennessee Products & Chemical Corp. v. Dickinson,* 195 Tenn. 63, 256 S.W.2d 709 (1953), revenue statutes should be given a fair construction to effect the end for which they were intended.

■ Looking at Item Q. in the light of these rules it is our opinion, first, that the provision for crediting fran-

chise-excise taxes is not an exemption, and so is not subject to strict construction against the taxpayer. It is simply a provision for determining the basis upon which the tax will be paid.

■ Second, when this provision is so considered it cannot be characterized as a subordinate privilege to the privilege of operating a telephone business as is argued by the Commissioner. We repeat, it is simply a provision of a privilege tax, not itself a privilege, to be construed and applied in the light of the legislative intent manifested by its language; with no straining or wresting on our part in favor of either the State or the taxpayer.

■ What, then, was the legislative intent in changing the terminology used, from ''each person'' operating a taxes business in describing the taxpayer, to *''owners of such business * * * during the calendar year in which the tax hereby levied becomes due'',* in prescribing how much tax is to be paid? We think it can hardly be denied, when this provision is read in the light of the ordinary meaning of the words used, that the legislature intended the tax to be calculated by debiting against it the franchise and excise taxes paid by an owner of such business during the calendar tax year, whether he was the ''person'' operating the business at tax time or not. This is the only reasonable interpretation to be given the words of the statute. ''Owners * * * during calendar year'' does not have a present connotation. The reference is to a past event, an act done by one described differently from the taxpayer, and it is our duty so to interpret the provision, and apply it.

Consistent with this construction, we find that in T.C.A. sec. 67-4319, which deals with a phase of the

liability for gross receipts taxes of a transferee of a taxed business, the transferor, the past owner, is again referred to as "the owner", while in T.C.A. sec. 67-4320, which also deals with this tax, we again find the liable taxpayer referred to as the "person".

In final analysis, if one telephone or telegraph company is going to pay its gross receipts tax for a future operating year on a basis determined by deducting franchise and excise taxes paid on that business during the preceding calendar year, it is only fair and just that all taxpayers of the same class pay on this same basis. Indeed, any other application of Item Q., once it has been determined the item respecting excise-franchise taxes is simply a provision for determining the basis on which the tax is to be paid, would be fatally close to unconstitutional discrimination between taxpayers of the same class.

Accordingly, the decree of the lower court is set aside and the case is remanded for further proceedings consistent with this opinion.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.