# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**February 27, 1998**

**Cecil W. Crowson
Appellate Court Clerk**

RIVERGATE TOYOTA, INC.,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Plaintiff/Appellant,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Davidson Chancery
VS.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀No. 94-1689-I
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Appeal No.
JOE B. HUDDLESTON,⠀⠀⠀⠀)⠀⠀⠀01A01-9602-CH-00053
Commissioner of Revenue of the⠀)
State of Tennessee,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Defendant/Appellee.⠀⠀⠀)

APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

For the Plaintiff/Appellant:

James W. Cameron, III
Harwell Howard Hyne Gabbert & Manner
Nashville, Tennessee

For the Defendant/Appellee:

John Knox Walkup
Attorney General and Reporter

Christine Lapps
Assistant Attorney Genera

## MODIFIED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal relates to an automobile dealer's use tax liability for direct mail advertising brochures purchased from an out-of-state vendor but mailed to Tennessee residents. Following an audit, the Commissioner of Revenue assessed the dealer $8,708 for unpaid use tax, interest, and penalties. The dealer challenged the assessment in the Chancery Court for Davidson County. Following a bench trial, the trial court concluded that the Commissioner had correctly assessed the tax and awarded the Commissioner his legal expenses. The dealer now insists that its use tax assessment should have been based on the final printed cost of the brochures and that it was entitled to a credit for its postage expenses. We have determined that the dealer was not required to pay use tax on the postage but that the remainder of the Commissioner's assessment was correct. Accordingly, we affirm the judgment as modified herein.

## I.

Rivergate Toyota, Inc. is an automobile dealership located in Madison. In May 1992, it contracted with Sales Tools Unlimited, Inc., a marketing company located in Horn Lake, Mississippi, to design and produce advertising brochures and to mail them directly to Tennessee residents living in Rivergate Toyota's target market area. Sales Tools Unlimited designed and produced the brochures, and Rivergate Toyota determined the number of brochures to be mailed and the frequency and dates of the mailings. Once the brochures were completed, Sales Tools Unlimited began mailing approximately 920 brochures per week to vehicle owners whose names appeared on a list purchased from the Tennessee Division of Titling and Registration.

Sales Tools Unlimited billed Rivergate Toyota a flat fee for each brochure it mailed, but neither Sales Tools Unlimited nor Rivergate Toyota collected or remitted sales or use tax. In 1994, the Tennessee Department of Revenue conducted a routine field audit of Rivergate Toyota for a period from December 1990 through December 1993. After ascertaining that Rivergate Toyota had paid Sales Tools Unlimited over

$80,000 for designing, producing, and mailing the brochures, the Commissioner of Revenue assessed Rivergate Toyota $8,708 for unpaid use tax, interest, and penalties.

Rivergate Toyota disagreed with the Commissioner's assessment and filed suit in the Chancery Court for Davidson County challenging the assessment. It asserted that its use tax liability should have been based on $12,022.23 -- the final printed cost of the brochures. The trial court upheld the entire amount of the assessment and awarded the Commissioner $2,032 in attorney's fees and legal expenses in accordance with Tenn. Code Ann. § 67-1-1803(d) (1994).

## II.

This case presents the first occasion for us to construe Tenn. Code Ann. § 67-6-203(b) (1994). Specifically, we must determine the proper way to calculate the "value" of advertising publications subject to taxation therein. Rivergate Toyota argues that the brochures' "value" is not the same as their "cost price" and that its tax liability should be based only on the final printed cost of the brochures without considering the cost of the labor, services, or other expenses incurred to produce and distribute the brochures. These arguments are at odds with Tenn. Code Ann. § 67-6-203(b) and case precedents declining to recognize a distinction for purposes of taxation between a physical medium and its contents.

### A.

Determining the meaning of statutory language is a judicial function. *See Roseman v. Roseman*, 890 S.W.2d 27, 29 (Tenn. 1994); *State ex rel. Weldon v. Thomason*, 142 Tenn. 527, 540, 221 S.W. 491, 495 (1920). When called upon to construe tax statutes, we must give these statutes a fair construction, *see United Inter-Mountain Tel. Co. v. Moyers*, 221 Tenn. 246, 255, 426 S.W.2d 177, 181 (1968); *Knox v. Emerson*, 123 Tenn. 409, 415, 131 S.W. 972, 973 (1910), and we must not enlarge their operation to embrace situations beyond their expressed scope. *See Covington Pike Toyota, Inc. v. Cardwell*, 829 S.W.2d 132, 135 (Tenn. 1992); *Gallagher v. Butler*, 214 Tenn. 129, 147, 378 S.W.2d 161, 169 (1964).

Statutory terms draw their meaning from the context of the entire statute, *see Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994); *Knox County ex rel. Kessel v. Lenoir City*, 837 S.W.2d 382, 387 (Tenn. 1992), and from the statute's general purpose. *See City of Lenoir City v. State ex rel. City of Loudon*, 571 S.W.2d 297, 299 (Tenn. 1978); *Loftin v. Langsdon*, 813 S.W.2d 475, 478 (Tenn. Ct. App. 1991). Unless the statute requires otherwise, we will give statutory terms their natural and ordinary meaning, *see Nashville Golf & Athletic Club v. Huddleston*, 837 S.W.2d 49, 53 (Tenn. 1992); *Stein Constr. Co. v. King*, 643 S.W.2d 329, 331 (Tenn. 1982), and we will consider the dominant purposes and limitations of the statute "before becoming too deeply immersed in . . . hairsplitting distinctions." *Young Sales Corp. v. Benson*, 224 Tenn. 88, 92-93, 450 S.W.2d 574, 576 (1970).

Sales and use taxes provide a comprehensive system for raising public revenue by taxing the privilege of purchasing and using tangible personal property within the state. *See J.C. Penney Co. v. Olsen*, 796 S.W.2d 943, 945 (Tenn. 1990). They are complementary taxes and thus should be construed in pari materia. *See Art Pancake's United Rent-All v. Ferguson*, 601 S.W.2d 926, 930 (Tenn. Ct. App. 1979). Accordingly, precedents construing the sales tax statutes may provide helpful guidance for deciding use tax questions. *See Thomas Nelson, Inc. v. Olsen*, 723 S.W.2d 621, 622 n.2 (Tenn. 1987).

## B.

In 1990, the Tennessee Supreme Court approved the Commissioner's use of Tenn. Code Ann. § 67-6-203 to impose use tax on a department store's catalogues that were produced outside of Tennessee but mailed to Tennessee residents. *See J.C. Penney Co. v. Olsen*, 796 S.W.2d at 946. This tax was based on the "cost price of each item or article of tangible personal property . . . used, consumed, distributed, or stored for use or consumption in this state." The following year, the General Assembly amended Tenn. Code Ann. § 67-6-203 to codify the Tennessee Supreme Court's decision and to clarify the party responsible for payment of the tax.[1] While

---

[1]*See* Act of Mar. 13, 1991, ch. 29, 1991 Tenn. Pub. Acts 32 (codified as amended at Tenn. Code Ann. §§ 67-6-102(30)(B), -203(b) (1994 & Supp. 1997).

the tax approved in the *J.C. Penney Co.* case was based on the "cost price" of each item, the tax imposed by Tenn. Code Ann. § 67-6-203(b) was based on the "value" of each item. We are, accordingly, called upon to determine whether the General Assembly's use of the term "value" in Tenn. Code Ann. § 67-6-203(b) requires a different calculation than the one based on "cost price."

Tenn. Code Ann. § 67-6-203(b)'s legislative history contains no indication that the General Assembly consciously set out either to impose a use tax on catalogues, advertising fliers, or other advertising publications different from the use tax imposed upon other items of tangible personal property or to depart from the calculation of this tax approved in the *J.C. Penney Co.* case. To the contrary, the bill's sponsors explained repeatedly to their colleagues that the bill's purpose was to put the *J.C. Penney Co.* decision "in the law" and to "broaden the definition of use tax." During the Senate Finance, Ways & Means Committee's consideration of the proposal, the Deputy Commissioner of the Department of Revenue stated that "I don't really think the bill does anything different from what we're doing now." When asked if the language of the proposal caused him any difficulty, the deputy commissioner answered "No, sir."

Since Rivergate Toyota is asserting that the enactment of Tenn. Code Ann. § 67-6-203(b) changed the result of the *J.C. Penney Co.* decision, it had the burden of showing that the General Assembly intended the change. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 521, 109 S. Ct. 1981, 1991 (1989). When the General Assembly sets out to change settled legal rules, it usually says something concerning the change either in the statutory text or in the legislative history. However, when the General Assembly says nothing, it leads to a persuasive inference that the pre-existing rules are left in place. *See* William N. Eskridge, Jr., *The New Textualism*, 37 U.C.L.A.L. Rev. 621, 634 (1990).

We are not required to put aside common sense when we are called upon to construe a revenue statute. In the absence of any indication in either the statute's text or in the legislative history that the General Assembly purposefully used the word "value" to differentiate between the use tax on advertising publications and the use tax on other items of tangible personal property, we are not prepared to adopt

Rivergate Toyota's view that the measure of the use tax in Tenn. Code Ann. § 67-6-203(b) differs from the measure of the use tax in Tenn. Code Ann. § 67-6-203(a). Accordingly, we find that the term "value" in Tenn. Code Ann. § 67-6-203(b) has the same meaning as the phrase "cost price" in Tenn. Code Ann. § 67-6-203(a).[2]

## C.

Our conclusion that the term "value" in Tenn. Code Ann. § 67-6-203(b) has the same meaning as "cost price" in Tenn. Code Ann. § 67-6-203(a) forecloses Rivergate Toyota's argument that the "value" of the advertising publications taxable under Tenn. Code Ann. § 67-6-203(b) should not include the costs incurred to design and distribute its brochures. Tenn. Code Ann. § 67-6-102(5) (Supp. 1997) defines "cost price" as "the actual cost of articles of tangible personal property without any deductions therefrom on account of the cost of materials used, labor, or service costs, transportation charges, or any expenses whatsoever."

The courts have already recognized that an item may derive the greater part of its value from the services performed on it. Thus, the Tennessee Supreme Court has rejected arguments that only the cost of the raw materials should be taxed when the finished item is the essential part of the transaction. *See Thomas Nelson, Inc. v. Olsen*, 723 S.W.2d at 622 (declining to separate the cost of the materials used to fabricate advertising design models from costs to design and produce these models); *Crescent Amusement Co. v. Carson*, 187 Tenn. 112, 116-17, 213 S.W.2d 27, 29 (1948) (declining to recognize a distinction between a motion picture and the film it was on).

In this case, Rivergate Toyota contracted with Sales Tools Unlimited for the design, production, and distribution of direct mail brochures. These brochures were not inconsequential elements of the transaction but, in fact, were the sole purpose of

---

[2]Our conclusion that the General Assembly used the terms "cost price" and "value" interchangeably in Tenn. Code Ann. § 67-6-203 is buttressed by the fact that the accepted legal meaning of the two terms is essentially the same. The "cost price" is the amount a buyer pays to purchase an item. *See McCoy v. Hastings & Bradley Co.*, 61 N.W. 205, 205-06 (Iowa 1894); *Esterman-VerKamp Co. v. Rouse*, 278 S.W. 124, 127 (Ky. Ct. App. 1925). The "value" of an item for tax purposes is the item's worth in exchange for money as established freely between a willing buyer and seller. *See In re Montpelier & Barre R.R.*, 369 A.2d 1379, 1381 (Vt. 1977). The terms have, on occasion, been used interchangeably. *See Nieb v. Hinderer*, 4 N.W. 159, 160 (Mich. 1880).

the contract. The value to Rivergate Toyota was not just in the brochures themselves but in the completed brochures in the hands of potential customers. Since Rivergate Toyota contracted for mailing completed advertising brochures to potential customers, the trial court correctly concluded that it was liable for the "entire cost of the transaction" with Sales Tools Unlimited during the audit period.

## III.

Rivergate Toyota also argues that the cost of the postage used to mail the brochures should not have been included in the Commissioner's assessment. It asserts that postage is not tangible personal property and points out that the regulations specifically provide that postage charges for mailing advertising brochures are not subject to use tax. *See* Tenn. Comp. R. & Regs. r. 1320-5-1-.67(1), -.99(3) (1987). While the Commissioner agrees that postage charges are not subject to use tax, he asserts on appeal that the assessment was correct because Rivergate had not provided invoices in which these charges were stated separately as Tenn. Comp. R. & Regs. r. 1320-5-1-.99(3) requires.

The parties stipulated to the introduction of photocopies of the invoices Sales Tools Unlimited submitted to Rivergate Toyota. While these invoices are based on a flat fee per brochure mailed, most of the invoices bore attached copies of third class mailing statements showing the amount of postage attributable to the mailing of the brochures covered by each invoice. Even though these invoices do not itemize the postage charges, the attached statements from the United States Postal Service enable anyone examining the invoices to determine the precise amount of postage associated with each invoice.

The trial court determined that Rivergate Toyota was not entitled to credit for the postage charges even though the Commissioner agreed in his answer that "[t]he value of the postage will be removed from the assessment if plaintiff provides evidence establishing the amount." Consistent with the Commissioner's concessions during oral argument, we find that the third class mailing statements attached to the invoices essentially comply with the regulations and that Rivergate Toyota is entitled to credits against the assessment for all postage charges it can prove by producing

similar postage statements. Accordingly, on remand, the trial court should amend its order to direct the Commissioner of Revenue to give Rivergate Toyota a credit against its assessment for all postage charges evidenced by third class postage statements attached to Sale Tools Unlimited invoices during the audit period.

## IV.

We affirm the judgment as modified herein and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal in equal proportions to Rivergate Toyota, Inc. and its surety and to the Commissioner of Revenue for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
BEN H. CANTRELL, JUDGE