IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 17, 2004 Session

## AT&T CORP. v. RUTH JOHNSON, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 99-206-I     Irvin H. Kilcrease, Jr., Chancellor**

_____

**No. M2003-00148-COA-R3-CV - Filed April 8, 2004**

_____

This appeal concerns a challenge to the Commissioner's franchise and excise tax assessment. On cross-motions for summary judgment the chancellor found for the Commissioner. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

William Robert Pope, Jr., Jack W. Robinson, Jr., Mary Taylor Gallagher, Nashville, Tennessee, for the appellant, AT&T Corporation.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General, M. Ty Pryor, Assistant Attorney General, for the appellee, Ruth E. Johnson, Commissioner of Revenue, State of Tennessee.

### OPINION

In this appeal, AT&T challenges the Commissioner's assessments of franchise and excise tax for tax years 1991 through 1996. In its amended and supplemented complaint filed pursuant to Tennessee Code Annotated section 67-1-1801, AT&T challenged first the Commissioner's refusal to allow credits for net operating losses and industrial machine credits sought pursuant to Tennessee Code Annotated section 67-4-805, and section 67-4-808.[1] Upon cross-motions for summary judgment, the trial court found in favor of the Commissioner. From that order AT&T appeals. The appellant raises two issues which this Court finds dispositive. The first issue on appeal concerns this Court's opinion in *Little Six Corp. v. Johnson*, No. 01-A-01-9806-CH-00285, 1999 WL 336308

_____

[1] Sections applicable to the claim in this case have since been reorganized and repealed. *See* 1999 Tenn. Pub. Acts chapter 406; *see also* Tenn. Code Ann. §§ 67-4-2001-2116 (2003). Discussion in this opinion will be confined to those sections applicable to the tax years in question, 1991 through 1996.

(Tenn.Ct.App. May 28, 1999). The second issue on appeal concerns the Commissioner's application of Tennessee Code Annotated section 67-4-808 in declining to allow AT&T's claim for industrial machine credits. The facts are not in dispute; the only challenge on appeal is to the conclusions of law reached by the trial court. These conclusions enjoy no presumption of correctness on appeal and are reviewed *de novo* pursuant to Tennessee Rule of Appellate Procedure 13(d). *See Tennessee Farmers Mutual Ins. Co. v. American Mutual Liability Ins. Co.*, 840 S.W.2d 933, 936 (Tenn.Ct.App. 1992).

I.      NET OPERATING LOSS CARRYOVER AND *LITTLE SIX*
        A. AT&T and AT&TIS

        This case involves two corporate entities, American Telephone and Telegraph (AT&T) and American Telephone and Telegraph Information Systems (AT&TIS). AT&T formed AT&TIS in order to comply with a Federal Communications Commission ruling originally issued in May 1980. The Commission determined that the provision of customer premises equipment and certain other "enhanced services" were not necessary to communications services, and thus were required to be provided separate and apart from a telephone carrier's tariffed services. AT&T contested this decision throughout AT&TIS's existence and met with success when the Commission reversed its position in 1986. Nonetheless, AT&T formed the separate entity originally under the name of American Bell, Inc. in 1982 for the provision of these services. The named was changed in 1983 to AT&T Information Systems, Inc. AT&T was the sole stockholder and financing source for AT&TIS. From its inception through its merger with AT&T, AT&TIS sustained operating losses which it reported on its Tennessee Franchise and Excise Tax Returns.[2] AT&T was the survivor corporation in this corporate merger and attempted to carry over and deduct the net operating losses incurred by AT&TIS prior to merger. The Commissioner disallowed the deduction and AT&T filed suit. The chancellor's order contains the following appropriate discussion:

A.

        AT&T contends that it is entitled to deduct from its franchise and excise tax liability, the net operating losses accrued by Information Systems.
        The Commissioner disallowed AT&T's use of Information Systems' net operating losses. The Commissioner's disallowance of Information Systems' net operating losses was based on the provisions of T.C.A. § 67-4-805 and Revenue Rule 1320-6-1-.21(2)(d).
        T.C.A. § 67-4-805(b)(2)(c)(I) provides in pertinent part concerning "net operating losses":

> Any net operating loss incurred for fiscal years ending on or after January 15, 1984, "<u>net operating loss</u>" <u>being defined as the excess of allowable deductions over total income allocable to this state for the year of</u>

_____

[2] Pursuant to this Court's decision in *AT&T v. Huddleston*, 880 S.W.2d 682 (Tenn.Ct.App. 1994), AT&T and AT&TIS were required to file separate returns throughout the existence of AT&TIS.

> the loss, and which may be carried over and allowed in succeeding tax years until fully [] utilized in the next succeeding taxable year or years in which the taxpayer has net income, but in no case for more than fifteen (15) years after the table year in which the net operating loss occurs . . . (emphasis added)

Tennessee Department of Revenue Rule 1320-6-1-.21(2)(d) provides in pertinent part:

> Each corporation is considered a separate entity; therefore, in the case of mergers, consolidations, etc., no loss carryovers incurred by the predecessor corporation will be allowed as a deduction from net earnings on the tax return of the successor corporation. (Emphasis added)

### B.

AT&T argues that the Commissioner's adoption and application of Revenue Rule 1320-6-1-.21(2)(d) is arbitrary because the Rule exceeds the Commissioner's rule-making authority to prescribe rules and regulations pursuant to T.C.A. § 67-1-102. Additionally, AT&T argues that the Rule places unreasonable and arbitrary restrictions on the use of the net operating losses which are not within the scope of T.C.A. § 67-4-805(b).

### C.

The Tennessee Court of Appeals, in the case of Little Six Corporation v. Johnson, 1999 WL 336308 (Tenn.Ct.App.) held that the Revenue Department acted within its authority in creating Rule 1320-6-1-.21(2)(d). See T.C.A. § 67-1-102. Further, the Court of Appeals opined that the legislature's use of the singular form in the phrase "in the next succeeding year or years in which the taxpayer has net income", indicates that the legislature "intended that the entity enjoying the tax benefit flowing from an operating loss be the same one that suffered the loss." See T.C.A. § 67-4-805(b)(2)(C)(I).

### D.

This court finds that AT&T and Information Systems are considered separate corporations for purposes of Tennessee Franchise and Excise Tax Law. Therefore, AT&T is not allowed to deduct from its net earnings on its tax return net operating losses incurred by Information Systems, its predecessor corporation.

Accordingly, as to the "Net Operating Loss Carryover Issue", Commissioner's motion for summary judgment is granted. AT&T's motion for summary judgment is denied.

-3-

On appeal AT&T argues that our holding in *Little Six* should be reconsidered or, in the alternative, distinguished from the facts of this case. AT&T presents the same arguments advanced by the taxpayer in *Little Six*, without presenting any mandatory or persuasive authority requiring the abrogation of our prior decision.

In its argument that the facts in *Little Six* are distinguishable from the case at bar, AT&T urges two points, first that the FCC had required the formation of AT&TIS, and that the actual "taxpayer" for the purposes of Tennessee Code Annotated section 67-4-805 and Revenue Rule 1320-6-1-.21(2)(d), is in fact AT&T. We are unpersuaded by either argument. The facts of this case seem surprisingly similar to the facts in *Little Six*.

> Little Six financed most of the start-up expenses for Short Mountain with loans made from profits generated by its coal-mining operation. But as its coal reserves dwindled, the owners of Little Six decided to wind down the coal-mining operation and to concentrate on silica. On December 31, 1989, Little Six merged with Short Mountain through a statutory merger, with Little Six being the surviving corporation. One advantage of the merger was that it enabled Little Six to wipe $5.2 million in loans off its books.

*Little Six Corp. v. Johnson*, 1999 WL 336308, *1.

While the record does not reveal the advantages of the merger other than to regain the ability to directly provide enhanced services, the similarity in facts requires the similarity of result:

> Little Six claims that the regulation is invalid, because it enlarges the scope of the taxing statute beyond the mandate of the legislature. See *Covington Pike Toyota v. Cardwell*, 829 S.W.2d 132 (Tenn. 1992). However we believe that in creating the regulation, the Department had acted within its authority "to promulgate rules and regulations that are not inconsistent with the taxing statutes." Tenn.Code Ann. § 67-1-102. In particular, we agree with the Department that the legislature's use of the singular form in the phrase "in the next succeeding year or years in which *the taxpayer* has net income," (emphasis added) indicates that it intended that the entity enjoying the tax benefit flowing from an operating loss be the same one that suffered the loss.

*Little Six*, 1999 WL 336308, *2.

AT&T's argument that it is the "taxpayer" for the purposes of the statute ignores the well settled rule that a corporation is an entity separate and apart from the persons or corporations who own the stock.

The position asserted by AT&T assumes that the rights of the sovereign are subject to the same rules as are the rights of its citizens. The seemingly all inclusive language of a corporate

merger statute delineating the powers possessed by the survivor corporation is ineffective for any purpose when applied to the taxing power of the sovereign. *General Telephone Co. of the Southeast v. Boyd*, 343 S.W.2d 872 (Tenn. 1960). Said the supreme court in *General Telephone Co. of the Southeast*;

> Specifically, in the language of appellant's brief, here is its reasoning:
>> "Words in a statute are always to be given the meaning they have in common use. Use of the words, 'rights, privileges, powers, franchises and immunities as well of a public as of a private nature' in a merger statute evidences a clear intention on the part of the Legislature to allow the mergee corporation to continue operation of business without being subjected to additional gross receipts tax based upon the same business for the same taxing period. The privilege of continuing operation of the same business at the same locations during the same period without additional gross receipts tax is a public privilege within the ordinary meaning of the term and, therefore, under the expressed language of the merger statute passed from Southern Continental Telephone Company to General Telephone Company of the Southeast."
>> While the reasoning in the foregoing quotation is logical and appeals strongly to one's sense of justice under the facts of this case, nevertheless, the Court cannot escape the fact that under the holdings of this Court Section 48-505, T.C.A., hereinbefore quoted does not apply to the rights of the sovereign State of Tennessee.

343 S.W.2d 872, 875-76 (Tenn. 1960). While *General Telephone Co. of the Southeast v. Boyd* dealt with gross receipts tax and this case deals with franchise and excise tax, the principles involved are identical. The two corporations are separate entities.

Everything depends upon the wording of the statute imposing the tax. Tennessee Department of Revenue rule 1320-6-1-.21(2)(d) allows for exactly the rule as stated in *General Telephone Company of the Southeast v. Boyd*. AT&T does not have the benefit of a credit proviso in the statute that is broader in scope than the actual tax imposing provision such as was the case in *United Intermountain Telephone Company v. Moyers*, 426 S.W.2d 177 (Tenn. 1968). We affirm the trial court's grant of summary judgment to the Commissioner and denial of the same to AT&T. Since our refusal to abrogate or distinguish *Little Six* determines the issues regarding the disallowance of the credit for 1991 through 1996, it is unnecessary for us to address the jurisdictional argument raised by the appellant or the statute of limitations argument raised by the appellee.

II      THE INDUSTRIAL MACHINE CREDIT

AT&T also challenges the refusal of the Commissioner to allow the taxpayer an industrial machine credit for tax years 1993 through 1996. AT&T argued that the industrial machine credit statute as it existed in those years did not require qualification for the job tax credit as a pre-requisite

to industrial machine credit qualification. As grounds for that argument, AT&T asserts that a change in the statutory language in later versions of the statute evidences a new intent by the legislature to condition the extension of a credit only to taxpayers owning computer equipment and qualifying for the job tax credit. Appellant refers to *Nutt v. Champion Internat'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998) as authority for the presumption that amendments affect statutes prospectively unless the legislature clearly indicates otherwise. The Appellant urges that since the legislature amended the industrial machine credit statute in 1999 to clearly condition the credits availability upon qualification for the job tax credit for businesses using computer and computer equipment, this amendment suggests the absence of such intent in the statutes prior to 1999.

To the contrary, the state argues that the 1999 amendment to the statute simply confirmed the meaning of the previous state of law and did not indicate a change in legislative intent. *See City of Chattanooga v. Davis*, 54 S.W.3d 248, 268 (Tenn.2001). For the purpose of the statutory argument it is necessary to note that the industrial machine credit was always available to "industrial machinery" as that term is defined in 67-6-102. In 1994, the legislature passed chapter 762 of the Public Laws which, *inter alia*, provided an expansion to the definition of industrial machinery for the purposes of the tax credit. That act provided the following change to Tennessee Code Annotated section 67-4-808:

> (A) On each excise tax return, a credit shall be allowed for a percentage of the purchase price of industrial machinery purchased during the tax period covered by the return and located in Tennessee. For purposes of this section, "industrial machinery" means:
>
> > (i) "Industrial machinery" as defined by section 67-6-102; or
> >
> > (ii) "computer," "computer network," "computer software," or "computer system" as defined by section 39-14-601 and any peripheral devices, including but not limited to, hardware such as printers, plotters, external disc drives, modems, and telephone units purchased in the process of making the "required capital investment" in Tennessee described in section 67-4-908 to qualify for the job tax credit.

1994 Pub. Acts 762.

The expansion of the definition of industrial machinery always envisioned that in order for computers, networks and software as defined in § 39-14-601, as well as their peripheral devices, to qualify they had to be purchased in the process of making the "required capital investment" described in 67-4-908.

Contrary to the argument of the taxpayer, this statute contains no ambiguity. "Where a statute is plain and explicit in its meaning, and its enactment within the legislative competency, the duty of the courts is simple and obvious, namely, to say *sic lex scripta*, and obey it." *Miller v. Childress*, 21 Tenn. 320, 321-22 (1841). We find that the consideration of the legislative history

therefore is unnecessary. Likewise, consideration of the supplemental authorities submitted by the parties is unnecessary. The chancellor's grant of summary judgment to the state and denial of the same to AT&T is affirmed in all respects. The cause is remanded for the final calculation of the amounts due. Costs are assessed against AT&T.

 

_____
WILLIAM B. CAIN, JUDGE